ALMON, Justice.
This Court granted a petition for certio-rari to review this case because there appeared to be a material question of first impression that was erroneously decided by the Court of Civil Appeals, 519 So.2d 514. The case involves the Driver License Compact, Ala.Code 1975, §§ 32-6-30 through -36, and specifically, whether the licensing authority of this State can, in any circumstances, issue a license before the expiration of a revocation period imposed by the State of an applicant’s former residence.
Petitioner Welch had his Florida license revoked for five years after his second conviction there for driving under the influence of alcohol (DUI). Thirteen months later, he moved to Alabama, where a second conviction of DUI requires a one-year license revocation. See Ala.Code 1975, § 32-5A-191(d). Thus, under the licensing provisions of this State, he would have been able to apply for an Alabama license when he moved here.
The Driver License Division of the Department of Public Safety refused to issue him a license, however, whereupon he requested an administrative hearing. The chief of the license division wrote his attorney a letter in reply, stating:
“Under the Driver License Compact Act, this Department is prohibited from issuing your client a driver license until the withdrawal against his driver license in any other state is terminated.
“I realize Mr. Welch’s need for a license; however, I am sure you realize my position in that we are unable to issue him a driver license until he obtains a letter of clearance from the State of Florida.
“Therefore, he is not entitled to a hearing in this state.”
The record contains no further mention of a “letter of clearance.” On the contrary, after the filing of this suit, the Department of Public Safety admitted that it had not “formulated, propounded, or proscribed *518 [sic] written rules and regulations for the administration and implementation of the Alabama Driver License Compact Act.”
Welch filed this suit against the Department of Public Safety, its director, and the chief of the driver license division. The complaint sought a judgment declaring that Welch is entitled to an investigation as to whether it will be safe to grant him driving privileges and for an injunction requiring the Department to conduct such an investigation. He contended that the refusal to issue, a license “imposes an unfair and unreasonable burden on his ability to maintain employment in his profession and earn his livelihood”; that “a five year period of revocation is extraordinarily severe, especially in light of Ala.Code § 32-5A-191(d) which would impose a maximum period of only one year for the second offense”; and that
“such continued denial of his driving privileges ... constitutes ... an unwarranted and abusive violation of the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the United States Constitution and the Constitution of the State of Alabama, by arbitrarily and unreasonably discriminating between citizens of the State of Alabama in that [the] maximum length of revocation that Alabama would impose on its citizens for a second offense is one year, which is in excess [sic] of the period of deprivation of driving privileges the State of Alabama is imposing on the plaintiff by refusing to issue him a driver’s license.”
Welch executed and attached to his complaint an affidavit stating that he was not afflicted with any physical or mental disability that would prevent him from driving, that he was familiar with the driving rules and regulations of Alabama, and other things tending to show his capacity to be a safe driver, including:
“I am not now, nor have I ever been a habitual drunkard or addict to the use of narcotic drugs. I have not consumed any alcoholic beverages or any other intoxicant in over 6 months.”
The circuit court granted summary judgment for the defendants, and the Court of Civil Appeals affirmed. Defendants have not filed a brief in this Court.
Congress passed a resolution in 1958 giving its consent for the states to enter into agreements or compacts
“for cooperative effort and mutual assistance in the establishment and carrying out of traffic safety programs, including, but not limited to, the enactment of uniform traffic laws, driver education and training, coordination of traffic law enforcement_”
P.L. 85-684, 72 Stat. 635. The Driver License Compact stems from this enactment and has been adopted by at least 30 states.
The Alabama legislature enacted the Compact in 1966. See Ala.Code 1975, §§ 36-6-30 through -36. The terms of the Compact itself are included in § 36-6-31. The provisions pertinent to this case are in Article V, “Application for New Licenses”:
“Upon application for a license to drive, the licensing authority in a party state shall ascertain whether the applicant has ever held or is the holder of a license to drive issued by any other party state. The licensing authority in the state where application is made shall not issue a license to drive to the applicant if:
“(1) The applicant has held such a license, but the same has been suspended[1] by reason, in whole or in part, of a violation and if such suspension has not terminated.
“(2) The applicant has held such a license, but the same has been revoked by reason, in whole or in part, of a violation and if such revocation has not terminated, except that after the expiration of one year from the date the license was revoked, such person may make application for a new license if permitted by *519 law. The licensing authority may refuse to issue a license to any such applicant if, after investigation, the licensing authority determines that it will not be safe to grant to such person the privilege of driving a motor vehicle on the public highways.”
The Court of Civil Appeals held that the language “if permitted by law” brings in a reference to § 32-6-7: “A driver’s license shall not be issued to the following persons: ... (3) Any person whose driving right or privilege is revoked.”
This Code provision has not been amended since 1947, so the legislature necessarily did not have the Compact in mind when it wrote this provision. Thus, there is no reason to read § 32-6-7(3) as incorporating extraterritorial revocations, which are entirely outside the control of the legislature of this state. To give this section the reading applied by the Court of Civil Appeals would make any revocation by a Compact state, however severe, binding on the licensing authority of this state.
Furthermore, the interpretation by the Court of Civil Appeals requires a deviation from the terms of the Compact itself. That court’s analysis makes two references to the law of the state that revoked the license. First, under the Compact, the Department looks to other jurisdictions, and if the applicant has had his license revoked, he may not apply, except that he may do so after a year if permitted by law. Second, to determine if an application is “permitted by law,” the Court of Civil Appeals would have the licensing authority look again to the revocation made by the former licensing state. If the revocation is still in force under its own terms, an application for a new license could never be permitted by law under the Court of Civil Appeals’ opinion until the original revocation expires.
The opinion of the Court of Civil appeals and the practice of the Department have the effect of changing the Compact language from “The licensing authority ... shall not issue a license ... if such revocation has not terminated, except ... after the expiration of one year ...,” to “The licensing authority ... shall not issue a license ... if such revocation has not terminated, except ... after the termination of the revocation ...,” and the exception allowing application after one year becomes meaningless and has no field of operation. Thus, the inquiry would end as soon as it is discovered that the license is revoked and the revocation has not expired. The drafters of the Compact cannot be presumed to have done a futile thing by inserting the exception in article V(2).
“A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant, and so that one section will not destroy another unless the provision is the result of obvious mistake or error.”
Sutherland Stat. Const. § 46.06 (4th ed.).
Thus, an examination of the terms of the Compact and the law of this state leads to the conclusion that the exception should be construed as allowing an application and investigation after a year even if a prior revocation has not expired.
This conclusion is strengthened by the fact that, to achieve the meaning found by the Court of Civil Appeals, the Compact drafters could simply have combined (1) and (2) as follows:
“(1) The applicant has held such a license, but the same has been suspended or revoked by reason, in whole or in part, of a violation and if such suspension or revocation has not terminated. The licensing authority may refuse to issue a license to any applicant whose license has been revoked if, after investigation, the licensing authority determines that it will not be safe to grant to such person the privilege of driving a motor vehicle on the public highways.”
Because of the strong reciprocity policy of the Compact, we have researched the eases of other member states. No case directly on point has come to our attention, but to the extent the cases are analogous or contain dicta regarding this provision, they are consistent with the conclusion we have reached.
The case most closely on point is People v. Klaub, 130 Ill.App.3d 704, 85 Ill.Dec. *520 891, 474 N.E.2d 851 (1985). In that case, Klaub, an Illinois resident, had his driver’s license revoked, moved to Indiana, and obtained an Indiana driver’s license before the period of his Illinois revocation expired. Both Illinois and Indiana are parties to the Compact. Klaub moved back to Illinois four months after the expiration of the revocation period. Two months later, he was issued a citation for driving while his license was revoked. He was convicted on that charge, and the reported opinion decided his appeal from that conviction.
The court in Klaub examined the provisions of Illinois law that prohibit a person from driving if his or her license has been revoked and not reinstated and those provisions that set standards of safety for determining whether the license should be reinstated. The court contrasted these laws to the Illinois provision that allowed new residents to drive under their out-of-state licenses for 90 days and to the provisions of the Compact. The court reversed the conviction on two considerations:
“To reconcile the statutes here we first consider whether the defendant was prohibited by section 6-210 from driving in Illinois. After the defendant’s Illinois license was revoked, section 6-210 of the Code prohibited the defendant from driving in Illinois ‘ * * * until a license is obtained when and as permitted under [the Code] * * (Ill.Rev.Stat.1983, ch. 95½, par. 6-210.) However, the Driver License Compact is part of the Code. Therefore, when the defendant was issued a valid Indiana license he was issued a license satisfying the requirement of section 6-210.
“Secondly, we consider the Code’s objective of ensuring that only qualified and safe drivers be entitled to operate motor vehicles on Illinois highways. We find, in that regard, that the Compact provides essentially the same safeguards for issuance of a license to a driver who has had his license revoked as are found in the comparable Illinois procedures under section 6-208 of the Code. Consequently, we find that in this case the Code’s safety objective is met through reliance on the Compact, as incorporated by the Code.”
Id., 85 Ill.Dec. at 894, 474 N.E.2d at 854.
In reaching this holding, the court cited the pertinent provisions of the Compact with the following paraphrase:
“A party state may not grant an application of a person who has a party state’s license currently revoked for a violation, unless it is one year after the revocation and the application is permitted by law. Further, the Compact specifically empowers a party state’s licensing authority to investigate and then to deny, on the grounds of safety, a license to such an applicant.”
Id., 85 Ill.Dec. at 893, 474 N.E.2d at 853.
Another district of the Appellate Court of Illinois subsequently held that a license issued by a non-Compact state does not prevent a conviction in Illinois of driving while a former Illinois license is revoked. People v. Sass, 144 Ill.App.3d 163, 98 Ill. Dec. 623, 494 N.E.2d 745 (1986). The court discussed and distinguished Klaub. In distinguishing the treatment of licenses issued by Compact states, the court stated:
“Under the Compact, any party State, upon the receipt of an application for a license to drive, shall ascertain whether the applicant ever held a driver’s license from another party State. A party State may not issue a license after revocation in another State unless one year has elapsed since the revocation, and the issuing authority determines it will be safe to do so.”
98 Ill.Dec. at 626, 494 N.E.2d at 748. The same district made a similar statement in People v. Jones, 100 Ill.App.3d 831, 55 Ill.Dec. 840, 426 N.E.2d 1214 (1981).
The Court of Appeals of Oregon has also referred to the one-year provision of Article V(2) without limiting it by the period of the revocation: “Washington was authorized to issue a valid license to defendant under the Driver License Compact to which the two states are signatories after the expiration of one year from the date of revocation.” State v. Justesen, 63 Or.App. 544, 665 P.2d 380, 382, fn. 1 (1983) (citations omitted). In that case, the Oregon *521 revocation period was eleven months, and Justesen obtained a Washington license eleven and one-half months later. The court upheld his conviction in Oregon for driving without a license because he had failed to comply with other terms of his Oregon revocation.
See New Jersey Div. of Motor Vehicles v. Egan, 103 N.J. 350, 511 A.2d 133 (1986), for a case involving New Jersey’s adoption of the Compact. The court in Egan upheld a harsher penalty against New Jersey’s licensee than was imposed by Ohio (a non-Compact state), where the offense occurred.
The only case we have found that even arguably indicates that the Compact should be interpreted so that the Florida revocation period would be binding on this state is State v. Johnston, 152 Ariz. 273, 731 P.2d 638 (Ct.App.1987). In that case, Johnston had his license revoked in Colorado, but Montana did not thereafter revoke his Montana license. The court held that the Montana license prevented an Arizona conviction for DUI with a revoked license based on the Colorado revocation.
“Under authority of A.R.S. § 28-442, Arizona could have revoked appellee’s nonresident privilege to operate his vehicle in Arizona under his valid Montana license. See State v. Mitchell [136 Ariz. 386, 666 P.2d 486 (Ct.App.1982), aff’d, 136 Ariz. 364, 666 P.2d 464 (1983)]. There is no evidence, however, that his non-resident driving privileges were not in force at the time he was stopped. Additionally, under the Compact, Montana could have revoked appellee’s valid Montana license because of the revocation of his Colorado license, but it did not do so. Accordingly, we cannot conclude that Johnston was driving without a valid license at the time he was stopped....”
Id., 152 Ariz. at 275, 731 P.2d at 640. The court concluded:
“Although states that have signed the Compact can be expected to follow the purposes and requirements of the act, where they fail to do so, in a case such as this, we hold that a person’s license remains valid until the driver is properly notified of the revocation and provided with an opportunity for hearing.”
Id., 152 Ariz. at 276, 731 P.2d at 641. Although Johnston indicates the problems of inconsistent interpretations of the Compact or failure to comply with its terms, it does not tend to show that our interpretation of the one-year provision is wrong.
The Florida cases disclosed in our research on the Driver License Compact shed no light on our question. Irons v. State, 502 So.2d 43 (Fla.Dist.Ct.App.1987); Florida Dept. of Highway Safety v. Weinstein, 395 So.2d 1233 (Fla.Dist.Ct.App.1981).
The majority of cases interpreting the Driver License Compact involve the question of what effect the licensing state will give to an out-of-state conviction for DUI or other violation. See, e.g., Hilyer v. Dixon, 373 So.2d 1123 (Ala.Civ.App.1979), cert. denied, 373 So.2d 1125 (Ala.1979); Watson v. Dothard, 357 So.2d 361 (Ala.Civ.App. 1978); Director of Dept. of Public Safety v. Relford, 51 Ala.App. 456, 286 So.2d 860 (1973); Carter v. Dept. of Public Safety, 290 A.2d 652 (Del.Super.1972); Rigney v. Edgar, 135 Ill.App.3d 893, 90 Ill.Dec. 548, 482 N.E.2d 367 (1985); State v. Peterson, 347 N.W.2d 398 (Iowa 1984); State ex rel. Landon v. Macek, — Mont. —, 676 P.2d 228 (1984); Johnston v. Dept. of Motor Vehicles, 190 Neb. 606, 212 N.W.2d 342 (1973); State v. Regan, 209 N.J.Super. 596, 508 A.2d 1149 (App.Div.1986); Division of Motor Vehicles v. Kleinert, 198 N.J.Super. 363, 486 A.2d 1324 (App.Div.1985); Division of Motor Vehicles v. Lawrence, 194 N.J.Super. 1, 475 A.2d 1265 (App.Div.1983); Buck v. Motor Vehicles Div., 80 Or.App. 565, 723 P.2d 338 (1986), cert. denied, 302 Or. 299, 728 P.2d 531 (1986); Shell v. Bechtold, 338 S.E.2d 393 (W.Va.1985).
Therefore, we find nothing in the cases applying the Driver License Compact that is contrary to our interpretation on the basis of statutory construction. Neither do we find any overriding policy considerations to the contrary. While there is some degree of interference with the principle of reciprocity by one state’s granting a license to a driver whose license revocation from *522 another state still has an extended period remaining, we find three countervailing principles.
First, the legislatively declared policy of this state is that two convictions for DUI result in no more than a one-year revocation, and a longer revocation is contrary to that policy. We note in this regard that West Virginia imposes a ten-year revocation upon a second offense, see Shell v. Becktold, supra, or, in some circumstances, revokes a license for life, see W.Va. Code § 17C-5A-2 (1987 Cum.Supp.). If a person with such a revocation were to move to Alabama shortly after his second offense, he would not be eligible to apply for a new license for nine years longer than his fellow citizens of Alabama who had engaged in the same conduct, or might never be eligible. Welch’s equal protection claims might have some force here.
Second, the revoking state can refuse to recognize a privilege to drive in that state even if the person obtains a new license elsewhere. See State v. Johnston, 152 Ariz. 273, 731 P.2d 638 (Ct.App.1987), discussed above; Ala.Code 1975, § 32-5A-195(e). While such refusals to recognize the privilege would undermine reciprocity, the possibility of them removes some of the need to follow absolutely the longer out-of-state revocation. Furthermore, Florida might elect to grant him that privilege, not insisting on its five-year revocation, but rather respecting this state’s decision not to “determine[ ] that it will not be safe to grant such person the privilege of driving.”
Third, a policy of permitting the application and requiring an investigation does not insure the applicant the right to a license. The licensing authority must make the above-cited determination as to safety, and the prior revocation, together with the circumstances thereof, will be relevant considerations. The applicant’s conduct in the interim, his performance on tests administered here, and the laws of this state are also to be considered in the decision of whether to grant him a license. If Florida will grant the privilege to drive in that state to any Alabama licensee who has had two DUI convictions, there is no reason to conclude summarily that it will not do so in the case of one who has had a Florida license revoked less than five years previously.
For the foregoing reasons, we hold that the Court of Civil Appeals erred in affirming the decision of the circuit court. The judgment is reversed and the cause remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
All the Justices concur.

. To the extent the Compact distinguishes between suspensions and revocations, we take the distinction to be that a suspension temporarily renders the license inoperative, after which it may be reinstated, whereas after a revocation the person must formally apply for a new license, and that issuance of a new license sifter a revocation is discretionary, requiring a fact-finding investigation. See 60 C.J.S. Motor Vehicles § 164.48 (1969).