869 A.2d 822

**Norris Emmett GWIN**

v.

**MOTOR VEHICLE ADMINISTRATION.**

No. 91, Sept. Term, 2004.

Court of Appeals of Maryland.

March 10, 2005.

442

Leonard R. Stamm (Andrea Hayduk, Goldstein & Stamm, P.A., Greenbelt, on brief), for petitioner.

Valerie Johnston Smith, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), for respondent.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

CATHELL, J.

This appeal stems from the denial by respondent Maryland Motor Vehicle Administration ("MVA") of the April 8, 2003, application made by petitioner, Norris Emmett Gwin, for a Maryland driver's license. As of the date petitioner made his application, his driver's license had been revoked both in Illinois and in Florida and the MVA denied his application on the basis of Md.Code (1977, 2002 Repl.Vol.), § 16–103.1(1) of the Transportation Article, which prohibits the MVA from issuing a license "[d]uring any period for which the individual's license to drive is revoked ... in this or any other state." Petitioner sought review in the Maryland Office of Administrative Hearings ("OAH") of the MVA's failure to process his license application and in a hearing on January 15, 2004, before an Administrative Law Judge ("ALJ"), petitioner was granted his requested relief and the MVA was ordered to process petitioner's application for a driver's license. On February 10, 2004, the MVA filed a Petition for Judicial Review in the Circuit Court for Anne Arundel County. Following argument, the trial court issued a written opinion on August 5, 2004, reversing the decision of the ALJ. Thereafter, petitioner filed a Petition for Writ of Certiorari with this Court which we granted on November 29, 2004. *Gwin v. Motor Vehicle Administration,* 383 Md. 569, 861 A.2d 60 (2004).

Petitioner presents the following question for our review, to which we have added a second question to reflect the more narrow issue as presented to the trial court:

1. "[Does] the Driver License Compact[, Md.Code (1977, 2002 Repl.Vol.), § 16–703 of the Transportation Article] allow[ ] a Maryland resident with a permanent revocation of his Florida driver's license to apply for a Maryland driver's license after serving one year of the revocation?"

2. Does Md.Code (1977, 2002 Repl.Vol.), § 16–103.1(1) of the Transportation Article, conflict with the Driver License Compact, found at Md.Code (1977, 2002 Repl. Vol.), § 16–703 of the Transportation Article? [Alterations added.]

As we have reframed the focus of this case, we hold that there is no conflict between Md.Code (1977, 2002 Repl.Vol.), § 16–103.1(1) of the Transportation Article, which permits the MVA to deny a driver's license to an individual whose driver's license has been revoked in Maryland or any other state, and the Driver License Compact, found at Md.Code (1977, 2002 Repl.Vol.), § 16–703 of the Transportation Article. The clear legislative intent of these two statutes indicates that Maryland law recognizes extraterritorial license revocations and the MVA is not permitted to issue a license to an individual whose license has been permanently revoked in another jurisdiction, even after a period of one year of the revocation.

## I. Facts

Petitioner, currently a Maryland resident, completed an Application for a Maryland Non–Commercial Driver's License on April 8, 2003, in pursuit of a Maryland driver's license. In response to question number four on the application, which states, "Is your driver's license or privilege to drive suspended, revoked, refused or cancelled in this or any other state, Washington D.C., or Canada?" petitioner indicated in the affirmative. A bolded statement printed on the application immediately adjacent to the question four response area reads, **"If yes, you are not eligible for a Maryland driver's license."** This statement appears in response to Md.Code (1977, 2002 Repl.Vol.), § 16–103.1(1) of the Transportation Article, which states:

"**§ 16–103.1. [Persons not to be licensed]—Disqualifications.**

The Administration may not issue a driver's license to an individual:

(1) During any period for which the individual's license to drive is revoked, suspended, refused, or canceled in this or any other state, unless the individual is eligible for a restricted license under § 16–113(e) of this subtitle. . . ." [Alteration added.]

Petitioner's rather dismal driving record indicates that he has four convictions for driving under the influence of alcohol or drugs ("DUI") for which he received a license revocation in Illinois and a permanent license revocation in Florida.[1] It is

---

1. Petitioner appears to have received one DUI conviction in either Arkansas or Illinois in November 1976, and received DUI convictions in Florida in 1972, 1975 and 1984. Although there is indication in his Florida Driver History Record that the 1976 DUI offense occurred in Arkansas, the parties have indicated that the 1976 DUI resulted in revocation of petitioner's Illinois license. It is unclear where petitioner was living at that time. The 1984 conviction, when petitioner was presumably a Florida resident, was petitioner's fourth, and under Florida law, the result is permanent license revocation.

The MVA provided in its brief a synopsis of the history of Florida's permanent revocation statute:

"Until 1998, Fla. Stat. Ann. §§ 322.28(2)(e) and 322.271(4) (1997) provided that a person whose license was permanently revoked, based on four or more convictions of driving under the influence of alcohol, might be reinstated after 5 years with restrictions, if the person could demonstrate specific conditions and remedial treatment. *State Dep't of Highway Safety & Motor Vehicles v. Fountain,* [883] So.2d 300, 301 (Fla.App.1Dist.2004). Florida amended § 322.271(4) in 1998 to delete this option for drivers permanently revoked for four or more DUI's. *Id.* In 2003 the Florida Supreme Court found the amendment unconstitutional for violating the same subject matter bill requirement. For a time between that date and the date the Florida legislature reenacted the amendment, the statute prior to the change remained in effect. Persons subject to permanent revocation for DUI again had an opportunity to apply under the prior statute for reinstatement on conditions. *Id.* The Florida legislature properly reenacted the amendment [effective July 1, 2003], *Id.,* so at this time the provision for reinstatement is not available." [Alterations added.]

There is no indication that petitioner sought reinstatement of his Florida driver's license during any of the periods when reinstatement was available to him. The currently enacted Fla. Stat. Ann. § 322.28, effective July 1, 2003, states, in relevant part, as follows:

"**322.28. Period of suspension or revocation**

. . .

(e) The court shall *permanently revoke the driver's license or driving privilege of a person who has been convicted four times* for violation of

unclear precisely how long petitioner has resided in Maryland, but it appears to be at least since April 2000 given that petitioner's MVA record indicates that on April 6, 2000, he secured a Maryland State Identification card,[2] which is valid for five years.

The MVA declined to consider petitioner's application for a driver's license, noting on petitioner's application that he would "need clearance letters from the [Florida] and [Illinois] DMV[s]" (alterations added). In a letter from petitioner's counsel, dated April 9, 2003, one day after petitioner's license application was denied by the MVA pursuant to § 16–103.1, petitioner requested a hearing in the Office of Administrative Hearings. A hearing was scheduled for May 27, 2003, at which petitioner failed to appear, and, upon petitioner's request, a later hearing was scheduled for January 15, 2004. At the January 2004 hearing, petitioner appeared with his attorney before Mary Shock, Administrative Law Judge; no representatives from the MVA appeared, and the MVA proceeded on the documents it had submitted. Petitioner argued that the Interstate Driver's License Compact ("Compact"), into which Maryland had entered in 1987,[3] see 1987 Md. Laws, Chap. 320, codified at Md.Code (1977, 2002 Repl.Vol.), § 16–703 of the Transportation Article, supercedes Md.Code (1977, 2002 Repl.Vol.), § 16–103.1 of the Transportation Article and, effectively, compels the MVA to conduct an investigation of petitioner's fitness to drive a motor vehicle, and upon a satisfactory assessment, to issue petitioner a Maryland driv-

---

§ 316.193 [driving under the influence of alcoholic beverages or any chemical substance] or former § 316.1931 [repealed statute that provided punishment for driving an automobile while intoxicated] or a combination of such sections." [Alterations added.] [Emphasis added.]

2. Such a card, issued by the MVA, is solely for the purpose of identification. It does not convey or provide any driving privilege in this or any other state.

3. When Maryland entered the Compact in 1987, it became one of 36 participating jurisdictions, including Maryland's neighbors: Delaware, Virginia, Washington, D.C., and West Virginia.

er's license after he has served one year of the permanent revocation of his Florida license. Following the conclusion of petitioner's testimony and counsel's argument, the ALJ found that:

"[Petitioner has] been revoked in Illinois since 1982 and in Florida since 1984. And the Florida revocation is a lifetime revocation, so you are unable to have that cleared in order to apply for a license or to overcome the disqualification section of 16–103.1. But I have considered the Article [V] of the [C]ompact entered into with other jurisdictions. Article [V], Section 2, states if such revocation is not terminated, except after the applicant has held a license, but the same has been revoked by reason in whole or in part of a violation and if such revocation is not terminated except after an expiration of one year from the date the licensee was revoked, such person may make an application for a new license if permitted by law. And the licensing authority has the authority to refuse but an investigation must be performed. Even the disqualification section of 16–103.1 does not—although in the end it conflicts it does not prevent the application and the investigation[.][S]o I will order that the MVA process the licensee's application for a driver's license because it's been more than a year since the revocation." [Alterations added.]

On February 11, 2004, the MVA sought judicial review in the Circuit Court for Anne Arundel County of the ALJ's determination. The trial court examined the issue in terms of whether § 16–103.1 conflicts with § 16–703, and if there is a conflict, which statute prevails. In a decision dated August 5, 2004, the trial court reversed the ALJ and determined that the statutes did not conflict, and instead were intended to act in concert. The trial court reasoned that the language of § 16–103.1 evinces the General Assembly's intent to provide "recognition of extraterritorial revocations beyond that which the Compact recognizes" and § 16–103.1 "provides the MVA with a mechanism to recognize revocations of non-Compact states and deny issuance of a license on that basis."

## II. Standard of Review

Our review of this case is enabled by Md.Code (1984, 2004 Repl. Vol.), § 10–222 of the State Government Article, which provides in relevant part as follows:

"(h) *Decision.*—In a proceeding under this section, the court may:

(1) remand the case for further proceedings;

(2) affirm the final decision; or

(3) reverse or modify the decision if any substantial right of the petitioner may have been prejudiced because a finding, conclusion, or decision:

(i) is unconstitutional;

(ii) exceeds the statutory authority or jurisdiction of the final decision maker;

(iii) results from an unlawful procedure;

(iv) is affected by any other error of law;

(v) is unsupported by competent, material, and substantial evidence in light of the entire record as submitted; or

(vi) is arbitrary or capricious."

In undertaking judicial review, "the [c]ircuit [c]ourt is limited to determining whether there was substantial evidence on the record as a whole to support the agency's findings of fact and whether the agency's conclusions of law were correct." *Motor Vehicle Admin. v. Atterbeary,* 368 Md. 480, 490–91, 796 A.2d 75, 81 (2002) (alterations added); *United Parcel Service, Inc. v. People's Counsel for Baltimore County,* 336 Md. 569, 577, 650 A.2d 226, 230 (1994). "[W]e reevaluate the decision of the agency under the same statutory standards as would the circuit court, and we do not employ those standards to reevaluate the decision of the circuit or intermediate appellate court." *Charles County Dep't of Social Servs. v. Vann,* 382 Md. 286, 294, 855 A.2d 313, 318 (2004). *See Spencer v. Maryland State Bd. of Pharmacy,* 380 Md. 515, 523–24, 846 A.2d 341, 346 (2004); *Division of Labor v. Triangle General Contractors, Inc.,* 366 Md. 407, 416, 784 A.2d 534, 539 (2001); *Dep't of Health v. Campbell,* 364 Md. 108, 123, 771

A.2d 1051, 1060 (2001) (noting that it is the final decision at the administrative level, not the decision of the previously reviewing court, which is the focus of each level of judicial review).

▮▮▮▮ Our review is narrowly focused and we do not substitute our "judgment for the *expertise* of those persons who constitute the administrative agency from which the appeal is taken." *Bernstein v. Real Estate Comm'n. of Md.,* 221 Md. 221, 230, 156 A.2d 657, 662 (1959) (footnote omitted), *appeal dismissed,* 363 U.S. 419, 80 S.Ct. 1257, 4 L.Ed.2d 1515 (1960); *Bulluck v. Pelham Wood Apartments,* 283 Md. 505, 513, 390 A.2d 1119, 1124 (1978); *United Parcel Service, Inc.,* 336 Md. at 576–77, 650 A.2d at 230. As we explained many years ago in *Bernstein:*

> "Generally, when the entire record shows that the findings of fact and conclusions of law are supported by competent, material and substantial evidence taken before the agency and such *de novo* evidence, if any, as may be taken by the court, and such findings and conclusions are not against the weight of such evidence, it is the function of the court to affirm the order of the agency or remand the case for further proceedings if that be necessary. On the other hand, if the court should find that the substantial rights of a petitioner for review have been prejudiced, by one or more of the causes specified in § [10–222 of the State Government Article], because of an administrative finding, inference, conclusion or decision, then it is the function of the court to reverse or modify the order."

221 Md. at 230, 156 A.2d at 662 (alteration added).

### III. Discussion

Turning to the case before this Court, petitioner contends that the Driver License Compact, Md.Code (1977, 2002 Repl. Vol.), § 16–703 of the Transportation Article, trumps the allegedly conflicting Md.Code (1977, 2002 Repl.Vol.), § 16–103.1 of the Transportation Article. Specifically, in support of his position that "application for a new license, after the

expiration of one year from the date a license was revoked by another state, may be made if permitted by law," petitioner points to Article V of the Compact, with particular focus on Article V(2), which governs Applications for New Licenses:

"Upon application for a license to drive, the licensing authority in a party state shall ascertain whether the applicant has ever held, or is the holder of a license to drive issued by any other party state. The licensing authority in the state where application is made shall not issue a license to drive to the applicant if:

(1) The applicant has held such a license, but the same has been suspended by reason, in whole or in part, of a violation and if such suspension period has not terminated.

(2) The applicant has held such a license, but the same has been revoked by reason, in whole or in part, of a violation and if such revocation has not terminated, except that after the expiration of 1 year from the date the license was revoked, such person may make application for a new license *if permitted by law*. The licensing authority may refuse to issue a license to any such applicant if, after investigation, the licensing authority determines that it will not be safe to grant to such person the privilege of driving a motor vehicle on the public highways." [Emphasis added.]

The MVA responds that petitioner is incorrect in his assertion that § 16–703 Article V(2) "absolutely requires a party state to find individuals still revoked in other states eligible for licensure after one year." The MVA continues that petitioner's "assumption ignores savings language in the same Compact provision, providing that the minimum one-year eligibility must yield to a party state's other law prohibiting eligibility and licensure in those circumstances." That is, the MVA urges that the inclusion of the phrase "if permitted by law" found in Article V(2) functions as a savings clause, "recognizing that member states, such as Maryland, may have stricter licensure prohibitions that affect the out-of-state revoked driver's eligibility." This savings clause, according to the MVA, modifies solely "the exception permitting the applicant to apply for (and obtain) a license while still revoked in another

state ..." and serves to harmonize the provisions of the Compact with Maryland's other motor vehicle laws, including § 16–103.1.[4]

### A. License Application Processing and Denial

■ Petitioner draws a distinction between application for a new license and issuance of a new license and narrowly focuses his appeal on the issue of whether "[p]etitioner is *eligible* to apply for a Maryland driver's license and have an investigation conducted by the MVA" to determine petitioner's fitness as a safe driver (emphasis added). It is the distinction between application and licensure on which petitioner bases his contention that the MVA may issue a license after the expiration of one year from the date a license was revoked by another state. Petitioner goes on to note that the ALJ simply ordered that the MVA process petitioner's application for a license, and consideration of petitioner's eligibility to be *issued* a license is "not yet ripe for appeal: 1) because the investigation has not been conducted to determine whether it would be safe under Maryland law to issue him a license; and 2) the ALJ did not order the MVA to issue [petitioner] a license" (alteration added). Petitioner is essentially arguing that he should be considered for licensure and that, upon investigation, is confident that he ultimately will be issued a license in Maryland. In a letter to the OAH dated April 9, 2003, one day after petitioner's license application was denied by MVA pursuant to § 16–103.1, petitioner's counsel indicated his belief that he would prevail under the scrutiny of an investigation into his fitness:

> "Mr. Gwin is confident he will pass such an investigation and is willing to comply with any and all conditions that may be deemed necessary to protect the public safety. Although

---

4. The MVA observes that § 16–103.1, prohibiting the MVA from licensing an applicant whose driving privileges are revoked in another state, also "dovetails" with § 16–303(a) through (g), which prohibits a person from driving a motor vehicle on Maryland's highways while that individual's driving privileges are refused, canceled, suspended or revoked in Maryland or any other state.

he does have a serious alcohol problem, he has been abstinent since January 20, 2000. At that time he went into detox at Sinai Hospital in Baltimore for 3 or 4 days. From there he went to Reality House in Laurel for 45 days. From there he moved to a Transitional Rehabilitative Residence (TRR) for 14 months. Since leaving the TRR he has been attending 2 to 3 AA meetings per week and has stayed alcohol free."

The MVA disputes that this issue is not yet ripe, and classifies that which petitioner deems a failure to *process* the license application, as an actual *denial* of petitioner's license application. According to the MVA, its denial of the license application relegates petitioner's demand for an investigation irrelevant. The MVA notes that petitioner "challenged the authority of the MVA to deny his application under [§ 16–103.1], thereby initiating the contested case presently before this Court" (alteration added).

█ The occurrence which we have been asked to review has already taken place and "[t]his Court has defined a justiciable controversy as one wherein 'there are interested parties asserting adverse claims *upon a state of facts which must have accrued* wherein a legal decision is sought or demanded.' " *Boyds Civic Ass'n v. Montgomery County Council,* 309 Md. 683, 690, 526 A.2d 598, 601 (1987) (emphasis added) (quoting *Patuxent Oil Co. v. County Comm'rs of Anne Arundel County,* 212 Md. 543, 548, 129 A.2d 847, 849 (1957) (quoting 1 W.H. Anderson, *Actions for Declaratory Judgments* §§ 17 (2d ed.1951))). Moreover, we are confronted with the issue of a possible conflict between statutes applicable to petitioner and applied by respondent, and their dispute as to the proper application of the statutes is a recognition of the existence of a contested case and, indeed, places the issues squarely before us. Thus, our review is appropriate because "there is either an actual existing controversy, or antagonistic claims which indicate inevitable litigation, or when a party asserts a legal status or right and there is a denial by an adversary party, and the court is satisfied that such a decree

will serve to terminate the controversy." *Eberts v. Congress'l Country Club,* 197 Md. 461, 465, 79 A.2d 518, 519 (1951).

## B. License Disqualifications

The statutory provision containing the disqualification from licensure of a person whose driving privileges are revoked elsewhere emerged in 1970 as part of the Legislature's comprehensive repeal and reenactment of Maryland's Motor Vehicles Laws. *See* 1970 Md. Laws, Chap. 534. This disqualification, as found in the former Md.Code (1970), Art. 66½ § 6–103(2), stated, in pertinent part:

"**§ 6–103. What persons shall not be licensed.**

The department shall not issue any license under this subtitle:

. . .

2. To any person whose license has been suspended, refused, or cancelled, during the suspension, refusal, or cancellation, or to any person whose license has been revoked."

Later, in 1977, the Legislature repealed Article 66½ and reenacted it as Titles 11 through 27 of the Transportation Article. *See* 1977 Md. Laws, Chap. 14. The license disqualification provisions were left largely intact and were supplemented also to bar licensure to anyone whose license had been *revoked.* The relevant portion of the statute appeared as follows:

"**§ 16–103.1. Persons not to be licensed—Disqualifications.**

The Administration may not issue a driver's license to an individual:

(1) During any period for which his license to drive is revoked, suspended, refused, or canceled...."

Owing to ambiguity in the manner in which the word "license" is defined in the Transportation Article,[5] the Legislature in

---

5. Md.Code (1977, 2002 Repl.Vol.), § 11–128 of the Transportation Article defines a license to drive as follows:

1993 Md. Laws, Chap. 209, clarified and augmented § 16–103.1(1) to articulate the intent that the disqualification apply both to Maryland and to out-of-state licensees whose license had been revoked, suspended, refused or canceled, and to provide an exception allowing restricted licensure under certain circumstances. The Floor Report and Bill Analysis accompanying 1993 Md. Laws, Chap. 209, indicated that the definition of "license" as the privilege to drive in Maryland obscured whether the provisions of § 16.103.1 applied to a person whose license had been revoked, suspended, refused or canceled in another jurisdiction. The bill was intended to codify the MVA's *de facto* policy of not issuing a license to any such disqualified individuals, to provide the MVA with clear authority to refuse to license such persons, and to eliminate any confusion in the law. This revision reads:

**"§ 16–103.1. [Persons not to be licensed]—Disqualifications.**

The Administration may not issue a driver's license to an individual:

(1) During any period for which the individual's license to drive is revoked, suspended, refused, or canceled *in this or any other state,* unless the individual is eligible for a restricted license under § 16–113(e)[6] of this subtitle...." [Alteration added.] [Emphasis added.] [Footnote added.]

---

"§ 11–128. License (to drive).
'License', as used in reference to the operation of a motor vehicle, means any:
(1) Driver's license; and
(2) Any other license or permit to drive a motor vehicle that is issued under or granted by the laws of this State, including:

. . .

(iv) The privilege of any individual to drive a motor vehicle, whether or not that individual is formally licensed by this or any other jurisdiction;
(v) Any nonresident's privilege to drive, as defined in this subtitle...."

6. Md.Code (1977, 2002 Repl.Vol., 2004 Supp.), § 16–113(e) of the Transportation Article, provides that the MVA may issue a restricted license as follows:

## C. The Driver License Compact

In recognition of the interaction of motor vehicle laws among states and the possibility for conflicting outcomes, the Maryland Legislature passed 1987 Md. Laws, Chap. 320 to become a part of the Driver License Compact. Chapter 320's introductory statement reveals the underlying legislative intent for entering the Driver License Compact and reads, in relevant part, as follows:

"FOR the purpose of providing for the State of Maryland to enter into a certain driver license compact with other jurisdictions in the United States; providing for the reporting and effect of certain convictions; prohibiting the Administration from assessing points against an individual under certain circumstances; requiring the Administration to assess points against an individual under certain circum-

---

"§ 16-113. Restricted licenses.

. . .

(e) 'Maryland only' license.—(1) In addition to the other restrictions provided under this subtitle, the Administration may issue:

(i) A driver's license that is valid only in the State of Maryland to an applicant who has been suspended in another jurisdiction as a result of failing to comply with the financial responsibility requirements of that jurisdiction; or

(ii) A temporary driver's license that is valid only in the State of Maryland to an applicant for reinstatement of a suspended or revoked driver's license, renewal of a driver's license, or a duplicate or corrected driver's license if, at the time of application:

1. The applicant's privilege to drive in another jurisdiction is revoked or suspended as a result of failing to comply with the licensing requirements of that jurisdiction for which a comparable violation in this State would not have resulted in revocation or suspension;

2. The initial violation that led to the revocation or suspension did not occur within the preceding 5 years;

3. The applicant is otherwise qualified to be licensed in this State; and

4. The Administration determines that the applicant will be able to take any actions required by the other jurisdiction for reinstatement of the privilege to drive in that jurisdiction.

(2) A temporary license issued under paragraph (1) of this subsection shall be valid for 90 days."

It is unclear whether petitioner would be eligible for a restricted "Maryland only" license.

stances; *prohibiting issuance of a driver's license under certain circumstances;* providing for the applicability of certain other laws . . . ."

The legislative intent is further highlighted by the statement of changes brought about by the bill as indicated in the Senate Judicial Proceedings Committee's Bill Analysis:

"By this bill, the State of Maryland adopts the Driver License Compact. The Compact is a comprehensive interstate agreement designed to promote compliance with motor vehicle laws in the party states and to make the reciprocal recognition of licenses to drive and eligibility more just and equitable. The Compact provides, among other things, for comity among the party states in issuing licenses and for cooperation in reporting convictions of motor vehicle offenses."

### D. Petitioner's License Revocations

Petitioner urges that the intent of the Compact, *i.e.,* "to give the MVA clear authority to refuse to issue a driver's license to a person whose driver's license has been suspended, revoked, refused or canceled in another jurisdiction," can be honored by the MVA's giving effect to an out-of-state revocation for one year before a licensee can apply for a Maryland license.[7] In addition, petitioner contends that although his fourth DUI prompted permanent revocation of his driver's license in Florida, according to the language of the Compact Art. IV,[8] his

---

7. Under this argument, one year of petitioner's Florida-imposed revocation would have expired on April 6, 1984, *i.e.,* one year after his overall fourth DUI conviction.

8. Md.Code (1977, 2002 Repl.Vol.), § 16–703 Art. IV, Effect of Conviction, states:

"(a) The licensing authority in the home state, for the purposes of suspension, revocation or limitation of the license to operate a motor vehicle, shall give the same effect to the conduct reported, pursuant to Article III of this Compact, [Reports of Conviction] as it would if

DUI offenses, in respect to his application for licensure in Maryland, must be treated as if they occurred in Maryland.[9] He explains:

"[I]t is clear that the State of Maryland did not intend for out of state revocations to be mandatory in this State, for periods of time longer than would have been imposed had the crime occurred in Maryland. Such an argument is contrary to Maryland policy and the intent of the legislature.... The MVA has failed to show that the legislative intent was to give greater weight to the laws of foreign jurisdictions than to the laws of Maryland, by barring a Maryland citizen from obtaining a license in this State pursuant to a lifetime revocation in another state, when the same offense had it occurred in Maryland would have resulted in a much lighter sanction."

In essence then, as described by the trial court, petitioner believes that "[b]ecause § 16–103.1 broadly disqualifies any person who currently has a revoked license in another state

---

such conduct had occurred in the home state, in the case of convictions for:

. . .

(2) Driving a motor vehicle while under the influence of intoxicating liquor or a narcotic drug, or under the influence of any other drug to a degree which renders the driver incapable of safely driving a motor vehicle...." [Alteration added.]

**9.** Md.Code (1977, 2002 Repl.Vol., 2004 Supp.), § 16–205(a) of the Transportation Article, provides that:

"(a) *Revocation.*—The Administration may revoke the license of any person who:

(1) Is convicted under § 21–902(a) or (d) [of the Transportation Article, *i.e.,* Driving while intoxicated or under the influence of alcohol] of this article of driving or attempting to drive a motor vehicle while under the influence of alcohol...." [Alteration added.] The revocation and reinstatement parameters are specified in Md.Code (1977, 2002 Repl.Vol., 2004 Supp.), § 16–208 of the Transportation Article:

"(5) (i) If it is the individual's fourth or subsequent revocation, the individual may file a reinstatement application at any time after 2 years from the day the revoked license is surrendered to and received by the Administration or, in the case of an individual who does not have a license issued under this title, after 2 years from the effective date of revocation."

without consideration of the comparable penalties in Maryland," the laws are in conflict. Thus, notwithstanding that a fourth DUI offense in Maryland leads to a minimum of two year's license revocation, petitioner would have us read § 16-103.1 as applying a less stringent penalty of one year's revocation, *via* the Compact's provisions, when an individual whose license has been revoked by another jurisdiction becomes a Maryland resident and seeks licensure in this State.[10]

Petitioner relies extensively on *Welch v. Alabama Dep't. of Pub. Safety*, 519 So.2d 517 (Ala.1987), for the proposition that the Compact should take precedence over related state law. In *Welch*, the Supreme Court of Alabama examined whether Alabama, a Compact state, could "issue a license before the expiration of a revocation period imposed by the State of an applicant's former residence." *Id.* at 517. Mr. Welch had his Florida license revoked for five years following his second DUI conviction. Upon moving to Alabama thirteen months after his Florida revocation, Welch's application for an Alabama driver's license was denied by the Alabama Driver License Division of the Department of Public Safety and Welch's attorney was informed that Welch would be required to obtain a letter of clearance from Florida before he would be granted a license. Welch brought suit, seeking an investigation to declare him a safe driver. The circuit court sided with the Division and Welch appealed. The intermediate appellate court looked to Ala.Code 1975 § 32-6-7, which states, " 'A driver's license shall not be issued to the following persons: ... (3) Any person whose driving right or privilege is revoked....' " and interpreted Alabama's enactment of the Compact as incorporating extraterritorial revocations, a finding that the Supreme Court of Alabama found to be erroneous. *Id.* at 519. After considering Art. V(2) of the Compact addressing "Application for New Licenses," the Supreme

---

**10.** We realize that petitioner's Florida revocation occurred more than twenty years ago, but as petitioner apparently made no efforts at reinstatement during those two decades, it is somewhat irrelevant that his *particular* revocation actually lasted more than one year or two years.

Court of Alabama determined that the Compact's language did not intend to incorporate "extraterritorial revocations, which are entirely outside the control of the legislature of [Alabama]. [T]he reading applied ... such an interpretation would make any revocation by a Compact state, however severe, binding on the licensing authority of [Alabama]." *Welch,* 519 So.2d at 519 (alterations added). In reversing the intermediate appellate court, the Alabama high court went on to determine that the phrase, "if permitted by law," found in Article V(2), required the licensing authority to look "to the revocation made by the former licensing state. If the revocation is still in force under its own terms, an application for a new license could *never* be permitted by law ... until the original revocation expires." *Id.* at 519.

In the case *sub judice,* petitioner offers *Welch* and several other cases [11] in support of his argument that the Compact requires "a state's licensing bureau to issue a license to a driver who is revoked in another state." The MVA responds that the cases necessarily invoke the peculiarities of a particular state's law and are, therefore, inapplicable to the present

---

11. These cases, from other Compact states, include *Bray v. Department of Pub. Safety,* 638 So.2d 732 (La.App.1994) (upholding Louisiana Department of Public Safety and Corrections' refusal to issue a license to a former Florida driver whose license had been suspended in Florida for five DWI convictions, but finding that under the Compact licensee may seek a Louisiana license after one year of the Florida revocation, though the Department may refuse licensure pending the outcome of an investigation); *State v. Vargason,* 607 N.W.2d 691, 698 (Iowa 2000) (holding that driver whose privileges had been revoked in Iowa for six years and permanently in Florida was eligible for a restricted driver's license only through the district court and not through the motor vehicle agency but also finding that Iowa's specific disqualification "statute does not preclude the issuance of an Iowa driver's license, if permitted by Iowa law, after a one-year period following the out-of-state revocation"); and *People v. Hutson,* 178 Ill.App.3d 836, 128 Ill.Dec. 40, 533 N.E.2d 1128, 1129 (1989) (finding that, under the Compact, the revocation of an Illinois licensee, who moved to Iowa, properly obtained an Iowa license and then moved back to Illinois where he was arrested while driving with expired Iowa license, was terminated by the Iowa license issuance and stating that "to find otherwise would arbitrarily assign an inferior position to persons relicensed in a foreign Compact state").

case. We are not persuaded by *Welch* and the other cited cases. The Alabama statute in *Welch* regarding license disqualification lacks the explicit language "in this or any other state" that is found in Md.Code § 16–103.1 and which clearly encompasses extraterritorial revocations. As we have discussed, the "in this or any other state" qualifier was added to § 16–103.1 in 1993 in order to dispel any uncertainty as to the MVA's authority to refuse to license an applicant whose driving privileges are suspended, revoked, refused or canceled in another jurisdiction. In addition, petitioner concedes that licensure in Maryland would not terminate his permanent Florida revocation.

The MVA urges that petitioner's interpretation of the interplay of § 16–103.1 and § 16–703 is incomplete. The trial court summarized the MVA's position as follows:

> "[T]he words 'if permitted by law' are intended to harmonize Maryland requirements for a license with the uniformity efforts made by states entering the Compact.... [W]hen a driver has his license revoked in another jurisdiction, only after one year may he apply in Maryland, *and* only if Maryland law permits such an application. In this case, § 16–103.1 unambiguously prohibits issuance of a license to a person whose license is presently revoked in another state. The MVA also claims this has been the long-standing interpretation of the two statutes. It concludes, suggesting that its position is more accurate because it compels drivers with blemished out-of-state records to clear those records before applying in Maryland; such a preliminary cleansing of out-of-state driving records was an intention of the drafters of the Compact."

The parties to the instant appeal propose our acceptance of competing views of statutory intent. Accordingly, we must examine the statutes before us, the Driver License Compact, § 16–703, as well as § 16–103.1, in terms of the larger statutory scheme, namely, the promotion of safety through the recognition of both our State's and extraterritorial motor vehicle laws. Neither the Compact, nor § 16–103.1,

stands on its own and "we do not read particular language in a statute in isolation or out of context; rather, we construe statutory language in light of the Legislature's general purpose and in the context of the statute as a whole." *State v. Crescent Cities Jaycees Found., Inc.,* 330 Md. 460, 468, 624 A.2d 955, 959 (1993); *GEICO v. Insurance Comm'r,* 332 Md. 124, 132, 630 A.2d 713, 717 (1993). "[W]here statutes relate to the same subject matter, and are not inconsistent with each other, they should be construed together and harmonized where consistent with their general object and scope." *Bridges v. Nicely,* 304 Md. 1, 10, 497 A.2d 142, 146 (1985), *Crescent Cities Jaycees,* 330 Md. at 468, 624 A.2d at 959. We accept the presumption that the Legislature intended that which it enacted and "[n]either statute should be read ... so as to render the other, or any portion of it, meaningless, surplusage, superfluous or nugatory." *GEICO,* 332 Md. at 132, 630 A.2d at 717; *Gillespie v. State,* 370 Md. 219, 222, 804 A.2d 426, 428 (2002); *Montgomery County v. Buckman,* 333 Md. 516, 524, 636 A.2d 448, 452 (1994); *Tracey v. Tracey,* 328 Md. 380, 387, 614 A.2d 590, 594 (1992); *D & Y, Inc. v. Winston,* 320 Md. 534, 538, 578 A.2d 1177, 1179 (1990); *State v. 149 Slot Machines,* 310 Md. 356, 361, 529 A.2d 817, 819 (1987); *Kindley v. Governor of Md.,* 289 Md. 620, 625, 426 A.2d 908, 912 (1981); *Moberly v. Herboldsheimer,* 276 Md. 211, 217, 345 A.2d 855, 858 (1975). Our interpretation of a statute should "seek to avoid constructions that are illogical, unreasonable, or inconsistent with common sense." *Frost v. State,* 336 Md. 125, 137, 647 A.2d 106, 112 (1994); *Comptroller of Treasury v. Fairchild Indus., Inc.,* 303 Md. 280, 288, 493 A.2d 341, 345 (1985). Moreover, principles of statutory construction dictate that "where the language of a statute is clear, courts may not insert or omit words to make the statute express an intention not evident in its original form." *Bridges,* 304 Md. at 10–11, 497 A.2d at 147.

We observed in *Toler v. Motor Vehicle Admin.,* 373 Md. 214, 817 A.2d 229 (2003) (finding that a licensed driver for whom driving constituted a significant part of employment may accumulate sixteen points before the MVA may suspend

that individual's license) that " 'if the true legislative intent cannot readily be determined from the statutory language alone,' we may look to other indicia of that intent, including the structure of the statute, how it relates to other laws, its legislative history, its general purpose, and the 'relative rationality and legal effect of various competing constructions.' " *Id.* at 220, 817 A.2d at 233 (quoting *Witte v. Azarian,* 369 Md. 518, 525–26, 801 A.2d 160, 165 (2002)). Finally, "[i]n our endeavor to harmonize the provisions of all of the relevant statutes, this Court will prefer an interpretation that allows us to avoid reaching a constitutional question." *Bank of America v. Stine,* 379 Md. 76, 86, 839 A.2d 727, 733 (2003); *see East Prince Frederick Corp. v. County Board of Comm'rs,* 320 Md. 178, 182, 577 A.2d 27, 29 (1990).

 Our reading of the Compact and of § 16–103.1 compels us to agree with the MVA's assessment of the two statutes. That is, § 16–103.1 authorizes the State of Maryland to recognize non-Maryland issued suspensions, revocations, refusals or cancellations by refusing to issue licenses for persons in those statuses, and to so recognize such suspensions, etc., does not create a conflict with the provisions of the Driver License Compact. The MVA states:

"No conflict exists between [ ] § 16–103.1(1) and the Compact when the savings clause, 'if permitted by law,' in [ ] § 16–703 V(2) is given effect and interpreted to say what it clearly says: that a driver revoked in one party state will be eligible for licensure in a different party state one year after the revocation took effect, so long as he is otherwise permitted to do so by the laws of that party state. Giving effect to the words in V(2) 'if permitted by law' carries out the presumption that the legislature intended both statutes to be harmonized to give full effect to each. Indeed, ignoring the modifying terms 'if permitted by law' renders that language meaningless and superfluous." [Alterations added.]

This Court finds nothing in the wording of § 16–103.1 to indicate that it was intended to be subordinated to the Com-

pact, nor do we find any statement in the language of the Compact found at § 16–703 to evidence an intent that the Compact was intended to supercede what may be viewed as more stringent state motor vehicle laws. Moreover, it is illogical to presume that the Legislature intended with its entry as a Compact state to make Maryland a safe harbor for extraterritorial drivers who have incurred harsh penalties in their home state for motor vehicle violations. The MVA echoes this sentiment, observing that the Compact was not intended to encourage "the worst and most dangerous drivers to avoid the consequences of their conduct by simply moving into another party state." As the trial court observed, the Legislature's intent in specifically inserting into § 16–103.1 the phrase, "in this or any other state":

> "was to recognize and respect extraterritorial revocations. This language serves two rational purposes. First, it provides recognition of extraterritorial revocations beyond that which the Compact recognizes. Second, the language of § 16–103.1 provides the MVA with a mechanism to recognize revocations of non-Compact states and deny issuance of a license on that basis. Under [petitioner's] interpretation of these statutes, revocations from Compact states would have no prohibitive force and effect in Maryland after one year, while revocations from non-Compact states would have force and effect for a period of time consistent with the statute in the non-[C]ompact state. This was not the intent of the General Assembly in adopting the Compact." [Alteration added.]

We are likewise persuaded of the viability of the MVA's interpretation in light of two other provisions found in the Compact. First, § 16–703, Art. I, articulates an express intent that an applicant's out-of-state driving record be considered prior to licensure. Article I(b)(2) reads, in relevant part:

> "(b) It is the policy of each of the party states to:
>
> (1) Promote compliance with the laws, ordinances, and administrative rules and regulations relating to the operation of motor vehicles by their operators in each of the jurisdictions where such operators drive motor vehicles.

(2) Make the reciprocal recognition of licenses to drive and eligibility therefor more just and equitable by considering the overall compliance with motor vehicle laws, ordinances and administrative rules and regulations as a condition precedent to the continuance or issuance of any license by reason of which the licensee is authorized or permitted to operate a motor vehicle in any of the party states."

In addition, § 16–703, Art. VI, addresses the Applicability of Other Laws:

"Except as expressly required by provisions of this Compact, nothing contained herein shall be construed to affect the right of any party state to apply any of its other laws relating to licenses to drive to any person or circumstance, nor to invalidate or prevent any driver license agreement or other cooperative arrangement between a party state and a nonparty state."

This language indicates that the Compact is not intended to supercede the application of other—possibly more stringent— motor vehicle laws.

## IV. Conclusion

The MVA properly denied petitioner's application for a Maryland driver's license based on the language of Md.Code (1977, 2002 Repl.Vol.), § 16–103.1(1) of the Transportation Article, which prohibits the MVA from issuing a driver's license "[d]uring any period for which the individual's license to drive is revoked ... in this or any other state." This provision clearly intended to encompass revocations of the license of both Maryland and out-of-state drivers. Section 16–103.1(1) does not conflict with the provisions of the Driver License Compact, Md.Code (1977, 2002 Repl.Vol.), § 16–703 of the Transportation Article, which allows a licensee, revoked elsewhere, to apply for a Maryland license after the expiration of one year of the out-of-state revocation. The intent of these enactments was to advance motor vehicle safety and the stricter Maryland laws do not undermine the provisions of the Compact.

JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY AFFIRMED; COSTS TO BE PAID BY PETITIONER.