STATE of Iowa, Appellee,

v.

Richard Duane VARGASON, Appellant.

Richard Duane Vargason, Appellant,

v.

Iowa Department of Transportation
Motor Vehicle Division,
Appellee.

No. 98–1978.

Supreme Court of Iowa.

March 22, 2000.

John W. Hofmeyer III, Oelwein, for appellant.

Thomas J. Miller, Attorney General, David A. Ferree, Special Assistant Attorney General, and John W. Baty, Assistant Attorney General, for appellees.

TERNUS, Justice.

These consolidated appeals require the court to determine the interplay between the Iowa law allowing the issuance of a temporary restricted license to a person whose driving privileges have been revoked and the Iowa law requiring this state to consider a driver's out-of-state driving record in making licensing decisions. *See* Iowa Code § 321J.4(9) (1999); *id.* ch. 321C, arts. IV(*a*), V.[1] In the Benton County case, the district court held that the appellant, Richard Vargason, did not qualify for a temporary restricted license because his driver's license had been revoked pursuant to the Interstate Drivers License Compact, Iowa Code chapter 321C. In the Fayette County case, the district court affirmed the decision of the appellee, the Iowa Department of Transportation (DOT), that the DOT had no authority to issue Vargason a driver's license or a temporary license.

We hold that Vargason's license revocation was pursuant to Iowa Code section 321J.4(4), not Iowa Code chapter 321C.

---

1. In 1997, the legislature added a new subsection to Iowa Code § 321J.4, resulting in the renumbering of section 321J.4(3)-(8) to 321J.4(4)-(9). See 1997 Iowa Acts ch. 177, §§ 8–11. Subsection (9) is the currently applicable section. In addition, this code section was again amended in 1998. *See* 1998 Iowa Acts ch. 1138, §§ 4, 36. Section 36 specifically provides that the amendment to § 321J.4(9) is to apply retroactively to July 1, 1997. The other statutes cited in our opinion were not amended in any significant manner during the time in question. Therefore, for the sake of consistency, we will cite to the 1999 Code.

Furthermore, nothing in chapter 321C prevents the district court from exercising its authority under Iowa Code section 321J.4(9) to order the DOT to issue a temporary restricted license to an individual whose license has been revoked under section 321J.4(4). Accordingly, we reverse the judgment of the Benton County District Court and remand that case for further proceedings. We affirm the judgment of the Fayette County District Court.

I. *Background Facts and Proceedings.*

A. *Facts common to both cases.* Richard Vargason, now an Iowa resident, has an extensive and dismal driving record. He has been convicted of operating under the influence (OWI) on eight occasions in three different states over a nineteen-year time span. Four of his convictions arose in Georgia (1979, 1981, 1993, and 1994); two occurred in Florida (1982 and 1985); the most recent convictions happened in Iowa (March 1996 and July 1996).

On February 3, 1995, the State of Florida permanently revoked Vargason's driving privileges. The record reveals, however, that should he reside in Florida in the future, he would be eligible to apply for a hardship reinstatement. It appears that a hardship reinstatement in Florida is akin to a work permit and similar to a temporary restricted license under section 321J.4(9), which we will discuss later.

Vargason moved to Iowa in 1995. He wasted little time in being arrested and charged with an OWI violation in March 1996. Because Vargason's chemical test results were .280, the arresting officer served an immediate notice upon Vargason that his driving privileges were revoked for 180 days. *See* Iowa Code § 321J.12(1)(*a*) (requiring the DOT to revoke an operator's driving privileges for 180 days if there has been no prior revocation under chapter 321J within the prior six years and the chemical test results indicate an alcohol concentration of .10 or more); *id.* § 321J.12(3) (permitting officer administering the chemical test to "serve immediate notice of revocation on a person whose test results indicate an alcohol concentration of .10 or more"). It appears that Vargason did not have an Iowa driver's license at this time because the officer refused to issue a ten-day temporary permit to him. *See id.* § 321J.12(4) (authorizing officer to take the person's Iowa license and issue a temporary license valid for ten days).

The Fayette County Attorney charged Vargason with first-offense OWI. *See id.* § 321J.2(2)(*a*) (defining first-offense OWI and prescribing punishment). Vargason ultimately pled guilty and was sentenced to sixty days in jail, with all but two days suspended; he was also put on probation for twelve months.

Vargason's next entanglement with law enforcement officers occurred in July 1996 in Benton County. At that time, he was arrested and charged with second-offense OWI, as well as operating a motor vehicle while his driving privileges were revoked. *See id.* §§ 321J.2(2)(*b*), .21. The officer administering the chemical test issued a one-year revocation of Vargason's operating privileges when the test results showed an alcohol concentration of .10 or more. *See id.* § 321J.12(1)(*b*), (3). Vargason subsequently pled guilty to second-offense OWI. In its judgment and sentence, the court sentenced him to one year in jail, with all but sixty days suspended, and placed him on probation for one year. The court also ordered that Vargason's driving privileges be revoked for six years. *See id.* § 321J.4(4) (providing for a six-year revocation for a third or subsequent OWI violation). The court apparently considered Vargason's out-of-state OWI convictions in determining that a six-year revocation was appropriate. *See id.* ch. 321C, art. IV(*a*)(2) (allowing a licensing authority to consider, for purposes of revocation of a driver's license, OWI convictions from another state).

Subsequent to these criminal violations, Vargason successfully completed a substance abuse treatment program and was discharged from probation in October

1997. He also served his sentences and paid all fines and fees. He had no additional OWI convictions.

B. *The agency action—Fayette County appeal.* · In February 1998, Vargason sought a driver's license. He was apparently unaware of the six-year revocation and believed that his 180–day and one-year revocations had expired. The DOT refused to issue a license to him, citing the Florida revocation as a bar. (It appears that the DOT, like Vargason, was also unaware of the six-year Iowa revocation.) The DOT relied on the following regulation in issuing its denial:

> If a person does not have a current out-of-state license to surrender or has been subject to an out-of-state suspension, revocation, disqualification, cancellation, denial, or bar within the last six years, the department may require an official letter from the out-of-state licensing agency before issuing a license. The official letter must verify that the person is eligible for licensing in that jurisdiction or would be eligible for licensing if future proof of financial responsibility were filed.

Iowa Admin. Code r. 761—601.1(3) (1998). Vargason contacted the Florida licensing authority, but it refused to issue a letter of eligibility because Florida law requires that the applicant reside in Florida in order to be considered for a "hardship reinstatement." Vargason then asked that the DOT at least consider issuing a temporary restricted license to him under section 321J.4(9). This request was also denied.

Upon Vargason's request for a review of the denial, a hearing officer upheld the DOT's decision. Vargason then sought formal review and a hearing was held before an administrative law judge (ALJ). It was during this hearing that the parties realized that Vargason was under a six-year revocation in Iowa as a result of the Benton County sentencing order for Vargason's second Iowa OWI conviction. Accordingly, in his decision, the ALJ confirmed that Vargason was subject to a six-year revocation and, therefore, was ineligi-

ble for an Iowa driver's license. *See* Iowa Code § 321.177 (prohibiting the DOT from issuing a driver's license to one whose driving privileges have been revoked). He also ruled, however, that because one year had elapsed since the revocation started, Vargason was eligible for a temporary restricted license. *See id.* § 321J.4(4)(*a*) (providing that an individual subject to a six-year revocation is not eligible for a temporary restricted license until one year from the effective date of the revocation); *id.* ch. 321C, art. V(2) (allowing individual subject to out-of-state revocation to apply for a new license "after the expiration of one year from the date the license was revoked"). Based on the record made at the hearing, the ALJ found that Vargason would not be a "threat to safety" if he were given a license. Therefore, the ALJ rescinded the DOT's denial and held that Vargason was immediately eligible for a temporary restricted license.

The DOT's agency appeal of the ALJ's decision resulted in a reinstatement of the DOT's denial of driving privileges to Vargason. The reviewing officer noted that the DOT could issue a license only if allowed to do so by statute. The officer concluded that the DOT had no statutory authority to issue any license to Vargason due to the Florida revocation. Vargason sought judicial review in Fayette County district court, which affirmed the agency decision.

C. *Benton County district court application.* During the course of the administrative proceedings, on August 5, 1998, Vargason filed an application in the Benton County OWI case, asking the court to order the DOT to issue a temporary restricted license. *See id.* § 312J.4(9) (allowing a person whose license has been revoked under chapter 321J to petition the court, after the expiration of the period of ineligibility, for an order requiring the DOT to issue a temporary restricted license). The district court held that section 321J.4(9) did not apply because Vargason was subject to an out-of-state revocation. The court denied Vargason's application.

## II. Scope of Review.

■ A. *Agency action.* Judicial review of agency action is governed by Iowa's Administrative Procedure Act, Iowa Code chapter 17A. *See Ramsey v. Iowa Dep't of Transp.*, 576 N.W.2d 103, 105 (Iowa 1998). We may reverse if the agency's decision is affected by an error of law or is not supported by substantial evidence. *See id.;* Iowa Code § 17A.19(8). Because issues of law are for the courts to decide, we grant only limited deference to an agency's interpretation of the governing statutes. *See Dico, Inc. v. Iowa Employment Appeal Bd.*, 576 N.W.2d 352, 354 (Iowa 1998); *Norland v. Iowa Dep't of Job Serv.*, 412 N.W.2d 904, 908 (Iowa 1987).

■ B. *District court ruling on application for temporary license.* The correctness of the district court's ruling on Vargason's application for a temporary restricted license turns on its interpretation of the relevant statutes. We review questions of statutory construction for correction of errors of law. *See State v. Wagner*, 596 N.W.2d 83, 85 (Iowa 1999); Iowa R.App. P. 4.

## III. Interplay Between Chapter 321J and Chapter 321C.

The resolution of this case rests on a determination of whether the DOT or the district court has the authority to grant a temporary restricted license to an individual who is also subject to an out-of-state revocation.[2] We will begin our discussion with an analysis of chapter 321J and the provisions made in our OWI laws for the issuance of a temporary restricted license. We will then determine whether anything in chapter 321C modifies the authority granted in chapter 321J with respect to the issuance of a temporary license.

A. *Temporary restricted licenses under chapter 321J.* Vargason relies upon section 321J.4(9), which states in pertinent part:

A person whose driver's license has ... been revoked under this chapter ... may petition *the court* upon the expiration of the minimum period of ineligibility for a temporary restricted license ... *for an order to the department* to require the department to issue a temporary restricted license.

(Emphasis added.) This statutory provision plainly and unambiguously gives the district court the authority to decide whether an individual subject to a chapter 321J revocation should be granted a temporary restricted license. A review of chapter 321J reveals a separate, specific provision also granting the DOT similar authority, *see* Iowa Code § 321J.20, but that provision does not apply to a person whose license is revoked for six years under section 321J.4(4). *See id.* § 321J.20(1), (2).

■ In summary, a person who is subject to a six-year revocation under section 321J.4(4) may apply to the district court for an order requiring the DOT to issue a temporary restricted license, provided, however, that the other requirements of the statute are met. Such other requirements include the expiration of the period of ineligibility, *see id.* § 321J.4(4) (imposing a one-year period of ineligibility), proof that a license is necessary for the person to maintain the person's present employment, *see id.* § 321J.4(9), and certification that an approved ignition interlock device has been installed on the person's vehicle, *see id.*

■ As applied to the facts of the case before us, only the district court has authority under chapter 321J to issue a temporary restricted license to Vargason because his license revocation was pursuant to section 321J.4(4).[3] Therefore, the prop-

---

2. In light of Vargason's six-year Iowa revocation, he no longer seeks a regular driver's license. *See* Iowa Code § 321.177 (prohibiting the issuance of a driver's license to anyone whose driving privileges have been suspended or revoked).

3. The State contends that Vargason's revocation was pursuant to chapter 321C, not chapter 321J. We reject this contention later in our opinion.

er forum for Vargason's request for such a license is the Benton County district court, not the DOT. We now consider whether chapter 321C affects the district court's authority to order the issuance of a temporary restricted license.

B. *Interstate compact—chapter 321C.* The Iowa legislature enacted the Interstate Drivers License Compact in 1965. *See* 1965 Iowa Acts ch. 295. This Act allows the director of transportation to enter into compacts with other states that conform to the provisions of chapter 321C. One purpose of such a compact is to

> [m]ake the reciprocal recognition of licenses to drive and eligibility therefor more just and equitable by considering the overall compliance with motor vehicle laws, ordinances and administrative rules and regulations as a condition precedent to the continuance or issuance of any license by reason of which the licensee is authorized or permitted to operate a motor vehicle in any of the party states.

Iowa Code ch. 321C, art. I(*b*)(2). To facilitate the consideration of out-of-state compliance with motor vehicle laws, the party states report each conviction related to the use or operation of a motor vehicle occurring in their state to the home state of the licensee. *See id.* art. III. For purposes of suspension or revocation of a driver's license, the licensee's home state may give the same effect to out-of-state OWI convictions that such convictions would have if they had occurred in the licensee's home state. *See id.* art. IV(*a*)(2); *accord State v. Peterson,* 347 N.W.2d 398, 401 (Iowa 1984).

Of particular importance to the present case is the following provision governing the application for a license to drive:

> Upon application for a license to drive, the licensing authority in a party state shall ascertain whether the applicant has ever held, or is the holder of a license to drive issued by any other party state. The licensing authority in the state where application is made shall not issue a license to drive to the applicant if:

> . . .

> 2. The applicant has held such a license, but the same has been revoked by reason, in whole or in part, of a violation and if such revocation has not terminated, *except that after the expiration of one year from the date the license was revoked, such person may make application for a new license if permitted by law.* The licensing authority may refuse to issue a license to any such applicant if, after investigation, the licensing authority determines that it will not be safe to grant to such person the privilege of driving a motor vehicle on the public highways.

Iowa Code ch. 321C, art. V(2) (emphasis added). Finally, the compact provides that

> [e]xcept as expressly required by provisions of this compact, nothing contained herein shall be construed to affect the right of any party state to apply any of its other laws relating to licenses to drive to any person or circumstance
> . . . .

*Id.* art. VI.

■ From these provisions, we conclude that chapter 321C prevents Iowa licensing authorities from issuing a driver's license to an applicant who held an out-of-state license that was revoked, subject to one exception. That exception is triggered after one year from the date of the out-of-state revocation. *See Russell v. Director of Revenue,* 861 S.W.2d 223, 224 (Mo.Ct. App.1993) (holding that Missouri applicant, whose Kansas license had been revoked for an OWI conviction, was not eligible for a Missouri license because one year had not passed since the Kansas revocation, as required by the Interstate Drivers License Compact). Upon the expiration of one year, the applicant may apply for a new license in Iowa "if permitted by law."

■ In apparent contradiction to these provisions, the State argues that the compact's statement of policy "seems to require that Iowa honor Florida's permanent

revocation." The State quotes the policy as to "[m]ake the reciprocal recognition of licenses to drive and eligibility therefor . . . as a condition precedent to . . . issuance of any license . . . in any of the party states." Iowa Code ch. 321C, art. I(*b*)(2). But the State misrepresents the policy of the compact in its cryptic quotation of the statute. The compact merely strives to "[m]ake the reciprocal recognition of licenses to drive and eligibility therefor more just and equitable *by considering the overall compliance* with motor vehicle laws . . . as a condition precedent to the continuance or issuance of a license." *Id.* In other words, the policy promoted by the statute is not to give effect to out-of-state revocations in the party state, but to allow the licensing state to consider out-of-state driving records in making its own licensing decisions. Therefore, we reject the State's argument that the intent of the compact is to require that Iowa licensing authorities honor out-of-state revocations for the entire period of the out-of-state revocation. *Cf. Kiebort v. Commonwealth,* 719 A.2d 1139, 1142 (Pa. Cmwlth.1998) (holding that when home state's length of suspension is different from party state where conduct and conviction occurred, home state is not required to give the same length of suspension as party state but rather treats the reported conduct as it would if such conduct had occurred in the home state).

In fact, it appears that this issue is directly addressed in article V, which merely requires that an out-of-state revocation be honored for one year from the date of the revocation. *See* Iowa Code ch. 321C, art. V(2). At that point, the licensing state may make its own licensing decisions as permitted by the law of the licensing state. This provision would be superfluous if Iowa were required to give the Florida revocation binding effect in Iowa during the entire period of the Florida revocation.

Having determined that an individual subject to an out-of-state revocation may apply for a license in Iowa "if permitted by law," we consider the State's contention that two Iowa statutes prevent the issuance of a license to Vargason. Iowa Code section 321.177 provides that the DOT shall not issue a license "[t]o any person whose motor vehicle license or driving privilege is suspended or revoked." Section 321.182 requires a person who makes application to the DOT to "[c]ertify that the applicant is not currently subject to suspension, revocation, or cancellation of any driver's license." The DOT asserts that it has given effect to these statutes by the promulgation of its administrative rule requiring that an applicant subject to an out-of-state revocation have an official letter of eligibility from the state issuing the revocation before the DOT will issue an Iowa license. *See* Iowa Admin. Code r. 761—601.1(3). Vargason contends that this rule conflicts with article V of chapter 321C that gives the out-of-state revocation only one year of binding effect. We agree.

■ We first point out that statutes must be read in pari materia. *See Peterson,* 347 N.W.2d at 401 ("Statutes relating to the same subject matter, or to closely allied subjects, may properly be construed, considered and examined in the light of their common purposes and intent."). Although section 321.177 prohibits the issuance of a driver's license to an applicant subject to a revocation, chapter 321J expressly permits the DOT, on its own or pursuant to court order, to issue a temporary restricted license, under certain conditions, to an individual subject to a revocation. *See* Iowa Code §§ 321J.4(9), .20. Thus, section 321.177 is not a blanket prohibition on issuing any type of license to a person under revocation. The same analysis applies to section 321.182. That section merely assists the DOT in implementing section 321.177 by requiring an applicant to certify that he is not currently subject to a suspension, revocation, or cancellation. Certainly these statutes do not prevent the DOT from issuing a temporary restricted license pursuant to chapter 321J, as the underlying premise of the temporary restricted license provisions of chapter 321J

is that the applicant is subject to a revocation. Consequently, we reject the State's contention that sections 321.177 and 321.182 authorize the administrative rule requiring a letter of eligibility from the out-of-state licensing authority.

■ Nor can rule 761—601.1(3) be sustained on the basis of the interstate compact. As we have already decided, that statute does not preclude the issuance of an Iowa driver's license, if permitted by Iowa law, after a one-year period following the out-of-state revocation. In fact, the rule directly conflicts with chapter 321C by deferring Iowa licensing decisions to the out-of-state licensing authority in contravention to the compact, which merely requires that Iowa *consider* the out-of-state convictions as if they had occurred in Iowa in making its own licensing decisions. Because rule 761—601.1(3) is inconsistent with the statutes it purports to effectuate, it is invalid and unenforceable. *See Lenning v. Iowa Dep't of Transp.*, 368 N.W.2d 98, 103 (Iowa 1985) (holding that "[a]n administrative rule which does not comport with the intent of the enabling legislation may be abrogated as an act in excess of the agency's authority").

In summary, chapter 321C allows Iowa licensing authorities to issue a license to a person subject to an out-of-state revocation, provided that one year has passed since the imposition of the revocation, if permitted by Iowa law. We have already determined that section 321J.4(9) authorizes the district court to order the issuance of a temporary restricted license to an individual subject to a six-year revocation. The DOT's administrative rule, being in conflict with statutory enactments, does not prevent the court from exercising this authority when the requirements of section 321J.4(9) are satisfied. That brings us to the final issue: did the district court err in holding that Vargason's license was revoked under chapter 321C, thereby rendering him ineligible for a temporary restricted license under section 321J.4(9)?

IV. *Vargason's Eligibility Under Section 321J.4(9).*

■ Section 321J.4(9) authorizes the district court to order the issuance of a temporary restricted license to

[a] person whose motor vehicle license has either *been revoked under this chapter*, or revoked or suspended under chapter 321 solely for violations of this chapter, or who has been determined to be a habitual offender under chapter 321 based solely on violations of this chapter.

(Emphasis added.) The Benton County district court ruled that Vargason's license was revoked under chapter 321C, taking his application out of the "narrow window" of section 321J.4(9). Vargason asserts that his license was revoked under chapter 321J, as required for a temporary restricted license.

■ We have reviewed chapter 321C and find no provisions in it for the revocation of a driver's license. As we discussed earlier, the compact merely requires (1) that Iowa consider out-of-state OWI convictions the same as it would consider them had the convictions occurred in Iowa, and (2) that Iowa honor out-of-state revocations for one year. Thus, licenses are not revoked pursuant to chapter 321C; rather the information that is obtained from another state as a result of the compact is used by Iowa to pursue suspension or revocation under other applicable Iowa statutes. Accordingly, the fact that the Benton County district court in the criminal case considered an out-of-state OWI conviction in deciding to issue a six-year revocation does not transform the revocation into one under chapter 321C, as authority for the revocation is found in chapter 321J, not chapter 321C.

The State also argues that Vargason does not meet the requirement expressed in section 321J.4(9) that the revocation be "solely for violations of this chapter," chapter 321J. The State misreads the statute. The restriction to revocations based solely on violations of chapter 321J applies to a person whose driver's license has been "re-

voked or suspended under chapter 321." The State has not argued, nor is there any basis in the record to conclude, that Vargason's driving privileges were revoked under chapter 321. Therefore, we do not decide whether an out-of-state OWI conviction qualifies as a violation of chapter 321J for purposes of section 321J.4(9).

In conclusion, we hold that Vargason's license was revoked "under this chapter," chapter 321J, as that phrase is used in section 321J.4(9). Therefore, Vargason met this eligibility requirement for a temporary restricted license.

### V. Summary and Disposition.

Vargason was subject to a six-year revocation of his Iowa driving privileges pursuant to chapter 321J, and to a lifetime revocation of his Florida driving privileges. Because one year had expired since his Iowa revocation, he was eligible under section 321J.4(9) to apply to the district court for a temporary restricted license. His Florida revocation did not operate as a bar to his eligibility because one year had expired since the Florida revocation became effective, thereby satisfying the requirements of the interstate compact, chapter 321C.

The Benton County district court erred in ruling that Vargason's driving privileges had been revoked pursuant to chapter 321C and that, as a consequence, he was not eligible for a temporary restricted license. Therefore, we reverse that decision and remand the Benton County case for further proceedings consistent with this opinion.

In the agency action, the DOT incorrectly ruled that Vargason's Florida revocation prevented the DOT from issuing any license to him. It was correct, however, insofar as it concluded that the DOT could not issue a license to Vargason. The DOT had no authority to issue Vargason a regular driver's license due to his Iowa revocation. It also had no authority on its own to issue a temporary restricted permit to Vargason because that authority rested with the district court imposing the Iowa revocation. Accordingly, we affirm the Fayette County district court's decision on judicial review of the DOT's ruling. *See Iowa Tel. Ass'n v. City of Hawarden,* 589 N.W.2d 245, 252 (Iowa 1999) (court may affirm on any basis appearing in the record and urged by the prevailing party).

**JUDGMENT OF BENTON COUNTY DISTRICT COURT REVERSED AND REMANDED; JUDGMENT OF FAYETTE COUNTY DISTRICT COURT AFFIRMED.**

All justices concur except LARSON, J., who takes no part.