2008 OK CIV APP 10

**David TULL, Plaintiff/Appellee,**

**v.**

**COMMISSIONER OF the DEPARTMENT OF PUBLIC SAFETY, State of Oklahoma, Defendant/Appellant.**

**No. 104,472.**

Court of Civil Appeals of Oklahoma, Division No. 1.

Oct. 12, 2007.

Michael Gardner, Law Offices of Joe Farnan, Purcell, OK, for Plaintiff/Appellee.

John K. Lindsey, Oklahoma Department of Public Safety, Oklahoma City, OK, for Defendant/Appellant.

ROBERT DICK BELL, Judge.

¶ 1 Defendant/Appellant, Oklahoma Department of Public Safety (DPS), appeals from the trial court's order requiring that DPS allow Plaintiff/Appellee, David Tull, to apply for an Oklahoma driver's license. DPS maintains Tull is ineligible to apply for an Oklahoma driver's license pursuant to 47 O.S.Supp.2006 § 6–103(A)(3) because his driving privileges have been permanently revoked by the State of Florida. Tull contends the Oklahoma Driver License Compact, 47 O.S.2001 § 781 *et seq.*, provides an exception to § 6–103(A)(3) that allows him to apply for an Oklahoma driver's license after the expiration of one year from the date of his Florida revocation. For the reasons set forth below, we conclude the Compact does not provide Tull with such an exception. Accordingly, after oral argument and briefing, we reverse the judgment of the trial court.

¶ 2 Tull has been an Oklahoma resident since 2003. The record reveals Tull was previously convicted of driving under the influence of alcohol (DUI) in Maryland (1984), Delaware (1989), Florida (1990) and Mississippi (1992). Following his fourth DUI conviction in 1992, the State of Florida permanently revoked Tull's driving privileges.[1]

¶ 3 When Tull applied for an Oklahoma driver's license-presumably in 2006 or early 2007–DPS refused the application pursuant to § 6–103(A)(3). That statute provides in relevant part:

A. Except as otherwise provided by law, the Department of Public Safety shall not issue a driver license to:

\* \* \*

3. Any person whose driving privilege has been suspended, revoked, canceled or denied in this state or any other state or country until the driving privilege has been reinstated by the state or country withdrawing the privilege; ...

---

1. FLA. STAT. ANN. § 322.28(e) provides "[t]he court shall permanently revoke the driver's license or driving privilege of a person who has been convicted four times for violation of" Florida's DUI laws. Any similar alcohol—or drug-related traffic conviction from another jurisdiction is "considered a conviction for the purposes of" § 322.28(e).

¶ 4 Tull appealed the denial to the district court, arguing the Compact provides an exception to § 6–103(A)(3). Specifically, Tull pointed to § 781, Art. V of the Compact, which states in relevant part:

> Upon application for a license to drive, the licensing authority in a party state shall ascertain whether the applicant has ever held, or is the holder of a license to drive issued by any other party state. The licensing authority in the state where application is made shall not issue a license to drive to the applicant if:
>
> &ast; &ast; &ast;
>
> (2) The applicant has held such a license, but the same has been revoked by reason, in whole or in part, of a violation and if such revocation has not terminated, *except that after the expiration of one (1) year from the date the license was revoked, such person may make application for a new license if permitted by law.* The licensing authority may refuse to issue a license to any such applicant if, after investigation, the licensing authority determines that it will not be safe to grant to such person the privilege of driving a motor vehicle on the public highways. (Emphasis added).

At trial, DPS confessed it had no evidence Tull did anything within the last 13 to 14 years that indicated it would be unsafe to grant him a driver's license.

¶ 5 After noting that Oklahoma law does not provide for permanent revocation of a driving privilege[2] and that the State has the right "to apply any of its other laws relating to licenses to drive," Art. VI of the Compact, the trial court granted Tull's petition. The trial court ordered DPS to allow Tull to apply for an Oklahoma driver's license and to issue him such license upon successful completion of all required testing.[3] From said judgment, DPS appeals. In addition to appellate briefing, the parties presented their positions at oral argument before this Court on September 20, 2007.

¶ 6 The issue in this appeal is a legal one: Do Oklahoma statutes permit a resident of this State, who is otherwise qualified but whose driving privileges have been permanently revoked by another state, to apply for an Oklahoma driver's license after the expiration of one year from the date of said extraterritorial revocation? Because the issue presents a question of statutory construction, we review the trial court's ruling *de novo. Villines v. Szczepanski,* 2005 OK 63, ¶ 8, 122 P.3d 466, 470. "When reexamining a trial court's legal rulings, an appellate court exercises plenary, independent and non-deferential authority." *Id.*

¶ 7 "The fundamental rule of statutory construction is to ascertain and, if possible, give effect to, the Legislature's intention and purpose as expressed in a statute." *Strong v. Laubach,* 2004 OK 21, ¶ 9, 89 P.3d 1066, 1070. "Generally, that intent is ascertained from the whole legislative act in light of its general purpose and object." *City of Tulsa v. State ex rel. Pub. Employees Relations Bd.,* 1998 OK 92, ¶ 14, 967 P.2d 1214, 1220.

> In the interpretation of statutes, courts do not limit their consideration to a single word or phrase in isolation to attempt to determine their meaning, but construe together the various provisions of relevant legislative enactments to ascertain and give effect to the legislature's intention and will, and attempt to avoid unnatural and absurd consequences. Words and phrases of a statute are to be understood and used not in an abstract sense, but with due regard for context and they must harmonize with other sections of the act to determine the purpose and intent of the legislature. The subject matter and purpose of a statute are material to ascertaining the meaning of a word or phrase used and that language should be construed to be harmonious with the purpose of the act, rather than in a way which will defeat it.

*McNeill v. City of Tulsa,* 1998 OK 2, ¶ 11, 953 P.2d 329, 332 (citations omitted).

---

**2.** The maximum suspension term of a driver's license for a DUI conviction under Oklahoma law is three years. 47 O.S.Supp.2006 § 6–205.1.

**3.** Although the trial court did not so find, DPS presented uncontroverted evidence that Tull's driving privileges are currently revoked or suspended not only in Florida, but also in Maryland, Delaware and Tennessee.

¶ 8 Section 6–103(A)(3) plainly states that DPS "shall not" issue an Oklahoma driver's license to any person whose driving privilege is suspended or revoked in another state. It appears clear the Legislature's use of the phrase "shall not" in the statute constitutes a mandatory prohibition, *see Jordan v. State,* 1988 OK CR 227, ¶ 4, 763 P.2d 130, 131, and neither party argues to the contrary. It is also apparent Art. V of the Compact permits the issuance of a license to an individual whose driving privileges were revoked in another jurisdiction more than one year previously "if" Oklahoma law otherwise permits the person to apply for an Oklahoma driver's license (and DPS determines it would be safe to grant such privilege). The question is whether the subject language in Art. V of the Compact supplies an exception to § 6–103(A)(3).

¶ 9 The Oklahoma Legislature adopted the Driver License Compact in 1967. The declared policy of the Compact, as set forth in Article I(b), states the enactment is intended to promote compliance with driving regulations, and make reciprocal recognition of driver's licenses and eligibility therefor more just and equitable among the party states. Further:

> The Compact was adopted to facilitate the transfer of information between member states regarding the validity of any driver's license or revocation of driving privileges in the member states. Member states are committed to report any actions they take regarding the driving privileges to the licensee's home state. Enforcement of laws or imposition of penalties by the home state is left to that state's discretion.

*Robertson v. State ex rel. Dept. of Pub. Safety,* 2007 OK CIV APP 47, ¶ 6, 162 P.3d 936, 937, n. 1. Approximately forty states and the District of Columbia have adopted the Compact.

¶ 10 Article VI of the Compact specifically states, "Except as expressly required by provisions of this compact, nothing contained herein shall be construed to affect the right of any party state to apply any of its other laws relating to licenses to drive to any person or circumstance, ..." As the *Robertson* opinion noted:

> The Legislature provided that, in the event of a conflict between the Compact

and any other "cooperative arrangement" and existing state laws, the existing state laws would prevail.... By its own terms, the Compact is meant to supplement, but not replace, existing state laws regarding revocation of Oklahoma licenses for out-of-state offenses.

*Robertson,* 2007 OK CIV APP 47 at ¶ 8, 162 P.3d at 938.

¶ 11 In support of its position, DPS relies extensively on *Gwin v. Motor Vehicle Admin.,* 385 Md. 440, 869 A.2d 822 (2005), *cert. denied,* 546 U.S. 823, 126 S.Ct. 359, 163 L.Ed.2d 67, which addressed under Maryland law the same issue we undertake today. We deem the rationale of *Gwin* persuasive and hereby adopt its holding. In *Gwin,* the petitioner's driving privileges were permanently revoked by Florida after his fourth DUI conviction. Years later, Gwin applied for but was denied a Maryland driver's license on the basis of the Florida revocation. *Id.* at 824–5. Maryland Code, § 16–103.1(1) of the Transportation Article, states the Maryland Motor Vehicle Association (MVA) "may not issue a driver's license to an individual ... [d]uring any period for which the individual's license to drive is revoked, suspended, refused, or canceled in this or any other state", subject to an inapplicable exception for a restricted license. *Gwin* at 830–1.

¶ 12 The petitioner in *Gwin* argued Maryland's Driver License Compact, Maryland Code, § 16–703 of the Transportation Article, trumped the allegedly conflicting § 16–103.1(1). Specifically, Gwin pointed to Article V(2) of the Compact-which is identical to Oklahoma's Art. V(2)-and urged he could apply for a Maryland license after the expiration of one year from the date his license was revoked by Florida. The MVA countered that Gwin's argument ignored the "savings language" in Article V that states "if permitted by law." The MVA argued Maryland law, specifically § 16–103.1(1), did not permit Gwin's licensure because of the Florida permanent revocation. *Gwin* at 828.

¶ 13 The Maryland high court agreed with the MVA and held, among other things, there is no conflict between § 16–103.1(1) and the Compact. The Court ruled "the Compact is not intended to supercede the

application of other-possibly more stringent-motor vehicle laws." *Gwin* at 836. The Court also noted the language of § 16–103.1(1) makes clear the Legislature intended to "recognize and respect extraterritorial revocations." *Id.* The Court held the Legislature did not intend "with its entry as a Compact state to make Maryland a safe harbor for extraterritorial drivers who have incurred harsh penalties in their home state for motor vehicle violations." *Id.* at 835. In rejecting Gwin's argument that he should be permitted to apply for a Maryland license after serving one year of the Florida revocation, the Court specifically noted Gwin would have suffered a minimum two-year revocation for a fourth DUI conviction in Maryland. *Id.* at 832.

¶ 14 Applying the analysis of *Gwin* to the present case, we hold Tull is ineligible to apply for an Oklahoma driver's license. As in *Gwin*, there appears to be no conflict between Oklahoma's Compact and § 6–103(A)(3). Even if a conflict was identified, § 6–103(A)(3) would, as previously discussed, prevail over the Compact. *Robertson*, 2007 OK CIV APP 47 at ¶ 8, 162 P.3d at 938; Art. VI of the Compact. The Compact was not intended to supercede application of Oklahoma's other vehicle laws.

¶ 15 Also like Maryland, Oklahoma law specifically recognizes extraterritorial revocations. Section 6–103(A)(3) prohibits the issuance of an Oklahoma driver's license to any person whose driving privilege has been revoked "in this state or any other state or country...." This language makes clear that Oklahoma's Legislature, like that of Maryland, did not intend to create a safe harbor for bad drivers from other jurisdictions. In this connection, we reiterate Tull's license could have been suspended for up to three years if he had been convicted of DUI in this state. 47 O.S.Supp.2006 § 6–205.1. It would be incongruent to allow a driver to apply for a license in Oklahoma one year after a per-

manent revocation in Florida when the same driver would not be permitted to apply for reinstatement of his Oklahoma driver's license for up to three years after a similar DUI conviction here.

¶ 16 Tulls urges this Court to adopt the ruling announced in *Welch v. Alabama Dept. of Pub. Safety*, 519 So.2d 517 (Ala.1987). However, as the *Gwin* Court also ruled under Maryland law, we deem *Welch* is distinguishable under Oklahoma law. The *Gwin* Court held *Welch* was inapplicable because "[t]he Alabama statute ... regarding license disqualification lacks the explicit language 'in this or any other state' that is found in Md.Code § 16–103.1 and which clearly encompasses extraterritorial revocations." *Gwin*, 869 A.2d at 833–4. As previously stated, the language of Oklahoma's § 6–103(A)(3) also explicitly encompasses extraterritorial revocations.[4]

¶ 17 We also find *Girard v. White*, 356 Ill.App.3d 11, 292 Ill.Dec. 376, 826 N.E.2d 517 (2005), instructive. There, the plaintiff applied for an Illinois driver's license after having his driving privileges permanently revoked by Florida. Illinois statutes, 625 ILCS 5/6–208(b), provided that "[a]ny person whose license, permit or privilege to drive a motor vehicle on the highways has been revoked shall not be entitled to have such license, permit or privilege renewed or restored" and that a person convicted of four or more DUI convictions cannot apply for a driver's license. *Girard*, 292 Ill.Dec. 376, 826 N.E.2d at 521. The *Girard* Court held the phrase "if permitted by law" in Art. V of the Compact means a license may be issued if such an application would be permitted under Illinois law. Pursuant to § 6–208, the plaintiff's application for a license was not permitted by law because he had four DUI convictions. *Girard*, 292 Ill.Dec. 376, 826 N.E.2d at 521.

---

4. The *Gwin* Court considered and rejected the holdings of each of the following cases because of the peculiarities of each state's laws: *Bray v. Department of Pub. Safety*, 638 So.2d 732 (La. App.1994) (held Art. V of Compact allowed plaintiff to apply for Louisiana license after serving one year of Florida permanent revocation, although court did not identify which law permitted such application); *State v. Vargason*, 607

N.W.2d 691 (Iowa 2000) (Iowa statute permitted appellant to apply for temporary restricted license, pursuant to Art. V of the Compact, one year after Florida license was permanently revoked); *People v. Hutson*, 178 Ill.App.3d 836, 128 Ill.Dec. 40, 533 N.E.2d 1128 (1989) (pursuant to Illinois law, issuance of foreign license under Compact terminates Illinois revocation). *See Gwin*, 869 A.2d at 834.

¶ 18 Tull argues *Gwin* is distinguishable because Oklahoma's § 6–103(A) begins with the phrase "Except as otherwise provided by law, ..." Tull contends the language in Art. V(2) of the Compact (that application may be made after one year of revocation in another jurisdiction) provides an exception to § 6–103(A). Although the language of § 6–103(A) differs slightly from the statute considered in *Gwin*, we conclude it does not provide the exception Tull's circular argument advances. Similar to the *Gwin* Court's observation discussed above, Tull's position is inconsistent with the fact he could have faced a three-year suspension for his last DUI conviction if it had been sustained under Oklahoma law. A drunk out-of-state driver should not be given an advantage unavailable to an Oklahoma driver under the same circumstances. Tull's argument is also inconsistent with Art VI of the Compact which states that nothing in the Compact shall be construed to affect the right of Oklahoma to apply any of its other laws relating to driver's licenses.

¶ 19 Upon *de novo* review and after consideration of the Legislature's intent and purpose as expressed in Oklahoma's Motor Vehicle Code, we hold Art. V of the Compact does not provide an exception to § 6–103(A)(3). The latter statute plainly prohibits the issuance of an Oklahoma driver's license to an individual who is subject to an extraterritorial revocation or suspension. Notwithstanding his apparent unremarkable record over the past decade, Tull is ineligible, pursuant to § 6–103(A)(3), to apply for an Oklahoma driver's license because his driving privileges are currently revoked in another jurisdiction. To hold otherwise would be inconsistent with the general purpose and object of both the Compact and § 6–103(A)(3). As was true in *Gwin* with respect to the Maryland Legislature, we do not believe our own Legislature intended for Oklahoma to be a safe haven for other states' unauthorized drivers. The judgment of the trial court is reversed.

¶ 20 REVERSED.

BUETTNER, J., concurs.

HANSEN, P.J., dissenting:

¶ 21 Oklahoma statutes do not allow a permanent revocation of a drivers' license. I agree with Tull, *Gwin* is distinguishable, the Compact provides an exception to § 6–103(A). I would affirm the trial court.