**Chris John PALLAS, petitioner, Appellant,**

v.

**COMMISSIONER OF PUBLIC SAFETY, Respondent.**

No. A09–835.

Court of Appeals of Minnesota.

April 20, 2010.

Steven J. Meshbesher, Kevin M. Gregorius, Meshbesher & Associates, P.A., Minneapolis, MN, for appellant.

Lori Swanson, Attorney General, Joel A. Watne, Assistant Attorney General, St. Paul, MN, for respondent.

Considered and decided by STONEBURNER, Presiding Judge; ROSS, Judge; and STAUBER, Judge.

## OPINION

ROSS, Judge.

Chris Pallas appeals from the district court's decision sustaining the Minnesota Commissioner of Public Safety's refusal to reinstate his Minnesota driver's license after Illinois permanently revoked his Illinois license. When a person whose license has been revoked by another state for longer than one year applies for a Minnesota license, the Commissioner of Public Safety may deny the application "if, after investigation," the commissioner concludes that it would be unsafe to issue a license. The commissioner refused to issue a Minnesota license until Pallas obtained a "clearance letter" from Illinois, a practical impossibility. Pallas petitioned the district court to reverse the commissioner's decision and the district court denied the petition. Because the commissioner must apply the discretion conferred on him by statute when asked to issue a license despite a partner state's ongoing revocation, the commissioner may not condition his decision on the applicant's obtaining a clearance letter from the revoking state. Imposing the condition is therefore arbitrary. We reverse the district court's denial of Pallas's petition and remand for the commissioner to determine licensure without in the range of the commissioner's statutory discretion.

## FACTS

Chris Pallas has been without an unrestricted driver's license since 2000. The Minnesota Commissioner of Public Safety revoked Pallas's Minnesota license in September 2000 after he was arrested on suspicion of driving while intoxicated and refused to submit to chemical testing. In October 2000 he obtained a limited license. He was again arrested on suspicion of drunk driving in February 2001 and he again refused alcohol testing. In April 2002, the commissioner cancelled Pallas's Minnesota license after learning that he had a lifetime license revocation in Illinois.

Pallas's lifetime revocation in Illinois occurred because he had four drunk driving convictions between 1979 and 1999. *See* 625 Ill. Comp. Stat. 5/6–208(b)(4) (2008) (mandating a lifetime driver's license revocation for a person convicted four times for drunk driving). The commissioner's April 2002 notice of cancellation informed Pallas that he must submit a "notice of reinstatement" of his Illinois license before he could be licensed in Minnesota. The parties refer to this notice as a "clearance letter."

In September 2002, Pallas petitioned for judicial review of the cancellation, but he dismissed his petition after the commissioner promised to issue him a license even if he failed to obtain a clearance letter from Illinois if he met other conditions. The letter to Pallas's attorney from the commissioner's legal counsel acknowledged that "it will be impossible for [Pallas] to get a clearance letter from Illinois because he is under a *lifetime* revocation." But the letter promised, "once your client can demonstrate completion of the rehabilitation requirements and all other requirements for licensure, Minnesota will be pre-

pared to issue a license despite the lack of a clearance letter."

These rehabilitation requirements included the condition that Pallas abstain from alcohol for four years. Pallas signed a statement acknowledging the abstinence requirement, including certain consequences if he failed: "I understand that if I use or consume alcohol or controlled substances after my abstinence date, my driving privileges will be or will remain canceled and denied"; and "I understand that abstinence is required at all times, even if a motor vehicle is not involved." The commissioner also advised Pallas that any alcohol or drug use would negate the commissioner's waiver of the clearance-letter requirement.

Pallas did not abstain. In August 2003, Pallas received a notice of cancellation of his driver's license for violating the requirement that he totally abstain from the use of alcohol after police arrested him for nondriving offenses. The arresting officer noticed a strong odor of an alcoholic beverage and reported that Pallas admitted to drinking. Pallas refused to take a breath test, and deputies placed him into processing for detoxification. A few months later, in January 2004, Pallas was arrested again and charged with second-degree driving while intoxicated, second-degree chemical test refusal, fleeing in a motor vehicle, and obstruction of legal process.

Pallas appears to have remained sober for the next four years, and he requested reinstatement of his Minnesota driver's license in May 2008. Pallas attested that he had abstained from alcohol since January 2004 and presented supporting statements from eight acquaintances, including his Alcoholics Anonymous sponsor. But the commissioner responded that although Pallas had completed his rehabilitation requirements, the state would not reinstate

his driver's license unless he obtained a clearance letter from Illinois.

Pallas petitioned the district court under Minnesota Statutes section 171.19 to overrule the commissioner's license-reinstatement decision. The district court conducted a hearing and denied the petition. Pallas appeals.

## ISSUE

Did the Commissioner of Public Safety abuse his discretion when he refused to reinstate a Minnesota driver's license under Minnesota Statutes section 171.50, Article V because the applicant had not obtained a revocation "clearance letter" from the state that revoked his license, rather than because the commissioner determined that it was unsafe to issue the license?

## ANALYSIS

Pallas challenges the commissioner's licensure determination and the district court's denial of his petition to have his driving privileges reinstated. A person whose driver's license has been refused, revoked, suspended, or canceled by the commissioner generally may petition the district court for reinstatement under Minnesota Statutes section 171.19 (2008). In a reinstatement proceeding, "the district court conducts a trial de novo and independently determines whether a driver is entitled to license reinstatement." *Madison v. Comm'r of Pub. Safety,* 585 N.W.2d 77, 82 (Minn.App.1998), *review denied* (Minn. Dec. 15, 1998). A petitioner has the burden of proving entitlement to reinstatement. *McIntee v. State, Dep't of Pub. Safety,* 279 N.W.2d 817, 821 (Minn. 1979). Pallas did not present any new evidence to the district court but argued that the commissioner's actions were arbitrary and contrary to law. The district court upheld the commissioner's determination after finding that there was no evi-

dence that the commissioner abused his discretion or acted fraudulently, arbitrarily, or unreasonably.

█ We review de novo the district court's application of the law in proceedings held pursuant to section 171.19. *Igo v. Comm'r of Pub. Safety,* 615 N.W.2d 358, 361 (Minn.App.2000), *review denied* (Minn. Oct. 17, 2000). And, like the district court, we may reverse the commissioner's licensure determination if it was fraudulent, arbitrary, unreasonable, or not within its jurisdiction and powers. *Stavlo v. Comm'r of Pub. Safety,* 379 N.W.2d 669, 671 (Minn. App.1986); *Antl v. State, Dep't of Pub. Safety,* 353 N.W.2d 240, 242 (Minn.App. 1984). We presume regularity and correctness when we review license matters. *Thorson v. Comm'r of Pub. Safety,* 519 N.W.2d 490, 493 (Minn.App.1994).

█ Pallas argues on appeal that the commissioner's decision to require a clearance letter from Illinois effectively denies him a Minnesota driver's license for life and was arbitrary and capricious. An agency's decision is arbitrary or capricious if the agency (1) relied on factors that the legislature had not intended it to consider, (2) failed to consider an important aspect of the problem, (3) offered an explanation for the decision that runs counter to the evidence, (4) rendered a decision that is so implausible that it could not be ascribed to a difference in view or the product of agency expertise, or (5) if the agency's decision reflects the agency's will and not its judgment. *Trout Unlimited, Inc. v. Minn. Dep't of Agric.,* 528 N.W.2d 903, 907 (Minn.App.1995), *review denied* (Minn. Apr. 27, 1995).

Minnesota and an overwhelming majority of other states have enacted the Driver License Compact, codified at Minnesota Statutes section 171.50. Under the compact, each party state acts cooperatively to foster mutual treatment of persons who operate vehicles in other party states. *See id.,* art. I(b)(1). This case turns on the construction of Article V of the compact, which governs how party states must treat applications for new licenses:

Upon application for a license to drive, the licensing authority in a party state shall ascertain whether the applicant has ever held, or is the holder of a license to drive issued by any other party state. The licensing authority in the state where application is made shall not issue a license to drive to the applicant if:

(1) The applicant has held such a license, but the same has been suspended by reason, in whole or in part, of a violation and if such suspension period has not terminated.

(2) The applicant has held such a license, but the same has been revoked by reason, in whole or in part, of a violation and if such revocation has not terminated, except that after the expiration of one year from the date the license was revoked, such person may make application for a new license if permitted by law. The licensing authority may refuse to issue a license to any such applicant if, after investigation, the licensing authority determines that it will not be safe to grant to such person the privilege of driving a motor vehicle on the public highways.

Like Minnesota, Illinois is party to the compact. *See* 625 Ill. Comp. Stat. 5/6–700 to –708 (2008). Pallas's Illinois revocation occurred more than one year ago, so, according to the compact, Pallas can apply for a new Minnesota license if permitted by law. The commissioner conceded at oral argument that Pallas was permitted *to apply* for a new license but argued that the district court and the commissioner appropriately followed the compact in refusing Pallas's application.

The district court relied on the compact to conclude accurately that the commissioner has the discretion to determine whether to issue a license to a person whose license is revoked in another state, and that it must base that determination on its assessment of whether it is safe to license the person. The district court seems to have acknowledged, however, that the commissioner neither undertook an actual investigation nor offered any explanation as to whether or how he decided that it would be unsafe to issue Pallas a Minnesota license. The district court did not find that the commissioner actually determined it was unsafe to grant Pallas a license, only that, based on the district court's own assessment of Pallas's misconduct, it *would have been* reasonable for the commissioner to have determined that licensing Pallas would have been unsafe: "Given that Petitioner has a lengthy driving record involving numerous alcohol related driving offenses in several states ... *it is reasonable* that the Commissioner *would determine* it unsafe to grant Petitioner the privilege of driving."

But the district court's role was not to decide what the commissioner *would have* concluded if the commissioner had undertaken the required investigation and made reviewable safety findings. Rather, the question before the district court was whether the commissioner's decision was arbitrary. We will consider that question de novo.

The district court recognized, as we do, that requiring the clearance letter from Illinois makes it "nigh impossible for [Pallas] to obtain a valid Minnesota driver's license." The commissioner has not provided any basis to expect that Illinois would waive its statutorily directed lifetime revocation of Pallas's Illinois license. The district court reasoned that because the commissioner's decision to impose the

requirement was Pallas's own fault on account of his 2004 relapse, the decision was supported by law. In so reasoning, the district court implicitly held that the compact authorizes the commissioner to condition his licensure decision on Pallas's obtaining a letter clearing his permanent Illinois driving revocation. We reach a different conclusion.

The plain language of the compact allows the commissioner to refuse to issue a Minnesota license to an individual whose out-of-state license has been revoked by a partner state for more than one year if an investigation informs the commissioner that issuing a Minnesota license will be unsafe: "The licensing authority may refuse to issue a license to any such applicant if, after investigation, the licensing authority determines that it will not be safe to grant to such person the privilege of driving a motor vehicle on the public highways." Minn.Stat. § 171.50, art. V. The statute does not expressly allow the commissioner to replace the investigative process with a clearance-letter requirement, or even to impose a clearance-letter requirement. We cannot construe the statute as allowing the commissioner to condition issuing a Minnesota license on the applicant's ability to secure a clearance letter. How can the statute be construed to implicitly vest the commissioner with discretion to require an applicant to be *cleared* of an out-of-state revocation in order to be licensed in Minnesota when the same statute expressly allows an applicant with an *uncleared* out-of-state revocation to become licensed in Minnesota? It cannot.

Not only was the clearance-letter condition contrary to law, but in this case the unauthorized condition was also a mirage. The commissioner through legal counsel acknowledged in 2002 that "it will be impossible for [Pallas] to get a clearance

letter from Illinois because he is under a *lifetime* revocation based upon having four DWIs on his record," and the district court acknowledged the same. It might be that "after investigation" the commissioner would find that it will be unsafe to license Pallas in Minnesota. But neither an investigation nor factfinding occurred here. Instead, Pallas was denied a license based on his failure to meet a condition that was legally implausible and practically "nigh impossible."

We do not suggest that the statute prohibits the commissioner from urging applicants to obtain clearance letters to remove out-of-state revocations to facilitate licensure in Minnesota.[1] But the compact makes little sense if the lack of a clearance letter, rather than a finding against safety, can be the basis for refusing to issue a Minnesota license. We conclude that it is unreasonable to construe the compact as allowing the commissioner to require an applicant to *clear* an out-of-state revocation as a prerequisite to *excuse* an out-of-state revocation.

In sum, the compact plainly provides that an applicant can be issued a license in Minnesota notwithstanding a lengthy revocation in another state and that before refusing to issue the license the commissioner must determine that issuing it would be unsafe. By requiring a clearance letter, the commissioner rendered Article V meaningless and divested himself of the discretion conferred under the compact. This cannot be the result that the legislature intended. We reverse and remand for the commissioner to decide the question of Pallas's reinstatement on the basis authorized by statute. Because we conclude that the commissioner's clearance-letter requirement was arbitrary, we do not address Pallas's due process argument.

## DECISION

The Commissioner of Public Safety's denial of Pallas's application for driver's license reinstatement was arbitrary because it rested solely on whether his out-of-state revocation was cleared—a condition that is logically inconsistent with the statute that the commissioner relied on to impose it. The commissioner has the discretion to grant or deny a license to a driver whose license has been revoked in another state for more than one year, but the decision must depend on the commissioner's safety assessment, not on the revoking state's willingness to waive the revocation. We therefore reverse the decision of the district court and remand to the Commissioner of Public Safety for a determination consistent with this opinion.

**Reversed and remanded.**

1. Nor do we suggest that Pallas is entitled to a license. The commissioner's brief summarized how other courts across the country have interpreted Article V and concluded that no cases hold that Article V "creates an *entitlement* to a license in any jurisdiction one year after a revocation in the home state." The commissioner accurately summarizes those cases. The commissioner also cites foreign cases holding that Article V merely supplements existing state laws and a person who remains under revocation in another jurisdiction may not even apply for a license.

*See, e.g., Gwin v. Motor Vehicle Admin.*, 385 Md. 440, 869 A.2d 822, 836 (2005); *Tull v. Comm'r of Pub. Safety*, 176 P.3d 1227, 1232 (Okla.Civ.App.2007). These cases are factually dissimilar to this case. In those cases, the state licensing agencies had statutory authority to deny the application independent from the compact. *Gwin*, 869 A.2d at 834; *Tull*, 176 P.3d at 1230. In this case, the commissioner has not provided any independent statutory ground preventing Pallas from applying for a new license.