Bryan Keith ROOP, Appellant

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING.

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 2, 2010.

Decided Aug. 18, 2010.

Publication Ordered Oct. 14, 2010.

Timothy P. Wile, Lansdale, for appellant.

Terrance M. Edwards, Asst. Counsel and Harold H. Cramer, Asst. Chief Counsel, Harrisburg, for appellee.

BEFORE: PELLEGRINI, Judge, and McCULLOUGH, Judge, and BUTLER, Judge.

OPINION BY Judge BUTLER.

Bryan Roop (Roop) appeals the December 17, 2009 order of the Court of Common Pleas of Montgomery County (trial court) affirming the Department of Transportation's (PennDOT) refusal to grant Roop a driver's license. The issue before this Court is whether the trial court erred as a matter of law in determining that Section 1503(a)(1) of the Vehicle Code,[1] precludes PennDOT from issuing Roop a driver's license where his driving privileges were revoked in another state. For the reasons that follow, we affirm the order of the trial court.

---

1. 75 Pa.C.S. § 1503(a)(1).

In February of 1992, Roop's operating privileges were revoked by PennDOT for three convictions of driving under the influence and two convictions of driving under a suspended license between 1988 and 1990 in Pennsylvania. Roop moved to Florida in 1992, where he was convicted of driving under the influence at least two more times. As a result, his operating privileges were permanently revoked under Florida law.

Roop returned to Pennsylvania and, in December of 2003 was issued a probationary license. His probationary license was renewed each year until 2007 when Penn-DOT learned of Roop's revocation in Florida.[2] Roop applied for and received a learner's permit in October of 2008. On March 17, 2009, PennDOT notified Roop that he was not eligible for a Pennsylvania driver's license.

■ Roop appealed to the trial court, and a hearing was held on June 22, 2009. On December 17, 2009, the trial court issued an order denying Roop's appeal, thereby affirming PennDOT's refusal to grant Roop a driver's license. The trial court determined that Article V(2) of the Driver's License Compact [3] does not create an exception to the prohibition against issuing a driver's license in Section 1503(a)(1) of the Vehicle Code, and that

PennDOT's issuance of a learner's permit to Roop did not estop it from denying him a driver's license. On March 22, 2010, the trial court issued an opinion pursuant to Pa.R.A.P. 1925(a). Roop appealed to this Court.[4]

Section 1503(a)(1) of the Vehicle Code states, "[t]he department shall not issue a driver's license to, or renew the driver's license of, any person: (1) Whose operating privilege is suspended or revoked in this or any other state." Article V(2) of the Driver's License Compact states:

The licensing authority in the state where application is made shall not issue a license to drive to the applicant if:

. . . .

(2) The applicant has held such a license, but the same has been revoked by reason, in whole or in part, of a violation and if such revocation has not terminated, except that after the expiration of one year from the date the license was revoked such person may make application for a new license if permitted by law. The licensing authority may refuse to issue a license to any such applicant if, after investigation, the licensing authority determines that it will not be safe to grant to such person the privilege of driving a motor vehicle on the public highways.

■ Roop argues that the words "if permitted by law" in Article V(2) of the Driv-

---

2. Roop had been issued probationary licenses by PennDOT pursuant to Section 1554 of the Vehicle Code, 75 Pa.C.S. § 1554, for three years beginning in December of 2003. Reproduced Record (R.R.) at 26a. In December of 2007, PennDOT notified him that there was an issue in Florida concerning fines that were owed, and denied the reissuance of his probationary license until the matter was addressed. R.R. at 26a–27a. It appears that Roop's operating privileges were restored in October of 2008, although the evidence does not make clear if this was in the form of another probationary license. R.R. at 26a–27a, 56a.

3. 75 Pa.C.S. § 1581.

4. "In reviewing a driver's license suspension case, our standard of review is limited to determining whether the trial court's findings of fact were supported by substantial evidence, whether errors of law had been committed or whether the trial court's determination demonstrated a manifest abuse of discretion." *Rothstein v. Dep't of Transp.*, 922 A.2d 17, 19 n. 6 (Pa.Cmwlth.2006).

er's License Compact should not be interpreted to create a blanket prohibition against PennDOT's authority to issue him a regular license. We disagree. It is obvious that since Section 1503(a)(1) of the Vehicle Code and Article V(2) of the Driver's License Compact relate to the same subject, they are *in pari materia*, and shall be construed together, if possible, as one statute. 1 Pa.C.S. § 1932. Moreover, Article VI of the Driver's License Compact states:

> Except as expressly required by provisions of this compact, nothing contained herein shall be construed to affect the right of any party state to apply any of its other laws relating to licenses to drive to any person or circumstance, nor to invalidate or prevent any driver license agreement or other cooperative arrangement between a party state and a nonparty state.

Thus, the Driver's License Compact was not meant to replace or supersede any statute that was already in place when it was enacted in 1996. In addition, the Driver's License Compact was developed as an agreement between states to, in part:

> [m]ake the reciprocal recognition of licenses to drive and eligibility therefor more just and equitable by considering the overall compliance with motor vehicle laws, ordinances and administrative rules and regulations as a condition precedent to the continuance or issuance of any license by reason of which the licensee is authorized or permitted to operate a motor vehicle in any of the party states.

Article I(b)(2) of the Driver's License Compact.

This is a case of first impression for this Court. There is no case law in Pennsylvania that discusses the interaction between Section 1503(a)(1) of the Vehicle Code and Article V(2) of the Driver's License Compact; however, other states have addressed the issue, and have reached different conclusions.

The courts in Maryland, Illinois and Oklahoma have determined that Article V(2) of the Driver's License Compact does not create an exception to their respective statutes which prohibit the issuance of a driver's license to a person whose license has been revoked in any state. In *Gwin v. Motor Vehicle Administration*, 385 Md. 440, 869 A.2d 822 (2005), the Court of Appeals of Maryland held:

> that there is no conflict between Md. Code (1977, 2002 Repl.Vol.), § 16–103.1(1) of the Transportation Article, which permits the MVA to deny a driver's license to an individual whose driver's license has been revoked in Maryland or any other state, and the Driver License Compact, found at Md.Code (1977, 2002 Repl.Vol.), § 16–703 of the Transportation Article. The clear legislative intent of these two statutes indicates that Maryland law recognizes extraterritorial license revocations and the MVA is not permitted to issue a license to an individual whose license has been permanently revoked in another jurisdiction, even after a period of one year of the revocation.

*Id.*, 869 A.2d at 824. Further, the court in *Gwin* stated:

> This Court finds nothing in the wording of § 16–103.1 to indicate that it was intended to be subordinated to the Compact, nor do we find any statement in the language of the Compact found at § 16–703 to evidence an intent that the Compact was intended to supercede what may be viewed as more stringent state motor vehicle laws. Moreover, it is illogical to presume that the Legislature intended with its entry as a Compact state to make Maryland a safe harbor for extraterritorial drivers who have incurred harsh penalties in their home

state for motor vehicle violations. The MVA echoes this sentiment, observing that the Compact was not intended to encourage 'the worst and most dangerous drivers to avoid the consequences of their conduct by simply moving into another party state.'

*Id.,* 869 A.2d at 835.

In *Girard v. White,* 356 Ill.App.3d 11, 292 Ill.Dec. 376, 826 N.E.2d 517 (2005), the Appellate Court of Illinois found that the Driver's License Compact "if permitted by law" exception referred to whether a driver's license was permitted under Illinois law. Further, it held:

> We do not read section 6–704 [of the Driver's License Compact] in such a way that its application trumps all other provisions of the Code in which the Secretary's power is limited.... We cannot adopt an interpretation which circumvents the Illinois public policy to prohibit repeat DUI offenders from obtaining driving privileges. Section 6–704(2) specifically states that a new resident with a revoked license may make an application if permitted by law, and in Girard's case, his application is not permitted by law.

*Id.,* 292 Ill.Dec. 376, 826 N.E.2d at 525–26.

Finally, in *Tull v. Commissioner of the Department of Public Safety,* 176 P.3d 1227 (Okla.Civ.App.2007), the Court of Civil Appeals of Oklahoma held:

> Art. V of the Compact does not provide an exception to § 6–103(A)(3). The latter statute plainly prohibits the issuance of an Oklahoma driver's license to an individual who is subject to an extraterritorial revocation or suspension. Notwithstanding his apparent unremarkable record over the past decade, Tull is ineligible, pursuant to § 6–103(A)(3), to apply for an Oklahoma driver's license because his driving privileges are currently revoked in another jurisdiction. To hold

otherwise would be inconsistent with the general purpose and object of both the Compact and § 6–103(A)(3). As was true in *Gwin* with respect to the Maryland Legislature, we do not believe our own Legislature intended for Oklahoma to be a safe haven for other states' unauthorized drivers.

*Id.,* 176 P.3d at 1232. The Oklahoma court further stated:

> A drunk out-of-state driver should not be given an advantage unavailable to an Oklahoma driver under the same circumstances. Tull's argument is also inconsistent with Art VI of the Compact which states that nothing in the Compact shall be construed to affect the right of Oklahoma to apply any of its other laws relating to driver's licenses.

*Id.*

Contrary to the above, Alabama, Louisiana and Iowa courts have determined that Article V(2) of the Driver's License Compact does create an exception to their respective statutes concerning the issuance of a driver's license to a person whose license has been revoked. In *Welch v. Alabama Department of Public Safety,* 519 So.2d 517 (Ala.1987), the Supreme Court of Alabama held that "an examination of the terms of the Compact and the law of this state leads to the conclusion that the exception should be construed as allowing an application and investigation after a year even if a prior revocation has not expired." *Id.,* 519 So.2d at 519. Specifically, the Alabama Supreme Court stated:

> there is no reason to read § 32–6–7(3) [5] as incorporating extraterritorial revocations, which are entirely outside the control of the legislature of this state. To give this section the reading applied by the Court of Civil Appeals would make any revocation by a Compact state, how-

---

5. The relevant language of Section 32–6–7

states: "A driver's license shall not be issued

ever severe, binding on the licensing authority of this state.

*Id.* However, the Alabama statute explicitly lacks any language referring to driving privileges revoked in any state other than Alabama.

In *Bray v. Department of Public Safety & Corrections*, 638 So.2d 732 (La.Ct.App. 1994), the Court of Appeal of Louisiana interpreted the Driver's License Compact as follows:

> [A]ccording to the Compact, because over one year has expired since the date plaintiff's Florida license was revoked, plaintiff may make application for a new license in Louisiana if permitted by law. Upon such application, the DPSC may refuse to issue the license if, after an investigation, the DPSC determines that it will not be safe to grant to plaintiff the privilege of driving on Louisiana highways.

*Id.*, 638 So.2d at 735. However, Bray was applying for "a restricted Louisiana driver's license that may only be issued under La.R.S. 32:415.1 following a first suspension, revocation or cancellation of a Louisiana license." *Id.*, 638 So.2d at 733. Thus, under the circumstances in *Bray*, a driver was permitted by law to apply for a restricted license if his regular license had been suspended for the first time.

In *Iowa v. Vargason*, 607 N.W.2d 691 (Iowa 2000), the Supreme Court of Iowa held:

> [C]hapter 321C allows Iowa licensing authorities to issue a license to a person subject to an out-of-state revocation, provided that one year has passed since the imposition of the revocation, if permitted by Iowa law. We have already determined that section 321J.4(9) authorizes the district court to order the issuance of a temporary restricted license to an individual subject to a six-year revocation.

*Id.*, 607 N.W.2d at 698. Clearly, like Louisiana, Iowa permitted the issuance of only a restricted form of operating privileges even when a person's driver's license has been revoked in any state.

In the above cited cases, it is clear that the Driver's License Compact does not create an exception to a state's statute which provides a blanket prohibition to the issuance of a driver's license, it merely provides for an exception if a state's law permits one. Here it is just as clear that Section 1503(a)(1) of the Vehicle Code does not permit the issuance of a regular license to a person in Roop's circumstances. Had Roop applied for a probationary license pursuant to Section 1554 of the Vehicle Code, 75 Pa.C.S. § 1554, PennDOT could have considered issuing another probationary driver's license to Roop. However, based on the testimony and evidence presented in this case, Roop was applying for a regular driver's license, and PennDOT properly refused to issue one. Therefore, the trial court did not err as a matter of law in determining that Section 1503(a)(1) of the Vehicle Code precludes PennDOT from issuing Roop a driver's license where his driving privileges were permanently revoked in Florida.

For the reasons above, we affirm the trial court.

### ORDER

AND NOW, this 18th day of August, 2010, the December 17, 2009 order of the Court of Common Pleas of Montgomery County is affirmed.

---

to the following persons: ... (3) Any person whose driving right or privilege is revoked."

*Welch*, 519 So.2d at 519.